ROBERT BRATT & another[1] vs. INTERNATIONAL BUSINESS
MACHINES CORPORATION & others[2].

Suffolk.    February 6, 1984. — July 16, 1984.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Libel and Slander. Privacy. Privileged Communication.*

Recklessness, rather than negligence, is the standard for determining wheth-
er a conditional privilege to make a defamatory statement has been
abused. [512-516]

An employer's conditional privilege to disclose defamatory medical infor-
mation concerning an employee is abused if the disclosure is made with
actual malice, or recklessly. [516-517]

Disclosure of private facts about an employee among other employees of the
same corporation may constitute an invasion of privacy under G. L.
c. 214, § 1B. [517-519]

A conditional privilege for legitimate business communications is not a de-
fense to an action for invasion of privacy under G. L. c. 214, § 1B;
however, because § 1B proscribes only unreasonable interference with
a person's privacy, legitimate countervailing business interests may ren-
der the disclosure of personal information reasonable and not actionable
under the statute. [519-521]

In determining whether a physician's disclosure of medical information
about an employee to his employer constitutes an actionable invasion
of privacy under G. L. c. 214, § 1B, it is necessary to balance the
degree of intrusion on the employee's privacy and the public interest in
preserving the confidentiality of a physician-patient relationship against
the employer's need for the information. [521-524]

QUESTIONS of law certified to the Supreme Judicial Court
by the United States Court of Appeals for the First Circuit.

*David C. Casey* for the plaintiffs.

*Edward P. Leibensperger (Deborah S. Russo* with him) for
the defendants.

LIACOS, J. The United States Court of Appeals for the First
Circuit has certified to us seven questions as to Massachusetts
law raised by libel and invasion of privacy claims brought by

---

[1] Carol Lee Bratt.

[2] Dr. Martha Nugent and Wesley R. Liebtag.

the plaintiff Robert Bratt against the defendants. The plaintiffs' action against International Business Machines Corporation (IBM) was commenced in the Superior Court in Middlesex County in February, 1980.[3] IBM filed a petition for removal to the United States District Court, District of Massachusetts, claiming diversity of citizenship, and the case was removed to that court.[4]

The defendants moved in Federal court for summary judgment on all counts of Bratt's amended complaint. In November, 1982, a judge of the United States District Court for the District of Massachusetts granted the motions for summary judgment, and Bratt appealed.[5] Following oral argument by the parties, the Court of Appeals for the First Circuit certified the questions of law to this court.

We conclude as follows with respect to the libel law questions. For a defendant in a libel case to lose a conditional privilege to publish defamatory material by "unnecessary, unreasonable or excessive publication," *Galvin* v. *New York, N.H. & H. R.R.,* 341 Mass. 293, 297-298 (1960), the plaintiff must prove that the defendant published the defamatory information recklessly. An employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job. A conditional privilege may be lost by abuse; the same standard for abuse through excessive publication applies when the defamatory material is medical information.

We also conclude, concerning the invasion of privacy claim under G. L. c. 214, § 1B, that the disclosure of private facts

---

[3] The initial complaint by Bratt alleged actions for intentional infliction of emotional distress against IBM, and a claim by Carol Lee Bratt, Bratt's wife, for loss of her husband's consortium. Bratt was granted his motions for leave to file amended pleadings in December, 1981, at which time he added the claims of libel and invasion of privacy.

[4] Subsequently, Bratt successfully moved to add as defendants Wesley R. Liebtag, an employee of IBM, and Dr. Martha Nugent, an agent of IBM. Bratt also was granted a motion to add another count to his complaint which was based on Nugent's alleged publication of Bratt's confidential medical information, without his authorization.

[5] The judge also had denied Bratt's motion to file a fourth amended complaint.

about an employee through an intracorporate communication is sufficient publication to impair an employee's right of privacy. We further conclude that no conditional privilege exists for legitimate business communications under § 1B. However, in evaluating whether an employer's disclosure of personal information concerning an employee constitutes an unreasonable interference with the privacy right, we would balance the employer's legitimate business interest in disseminating the information against the nature and substantiality of the intrusion. Finally, we would use the same balancing test if the information disclosed about an employee is medical information. A physician retained by the employer may disclose to the employer medical information concerning an employee if receipt of the information is reasonably necessary to serve a substantial and valid business interest of the employer.

We summarize the facts as they have been presented to us in the certification memorandum of the Court of Appeals. Bratt has been an employee of IBM since 1970 and is presently employed by the company. Bratt experienced several problems in his employment during the years 1971 through 1978. To seek resolution of these difficulties, Bratt utilized IBM's "open door policy," an internal grievance procedure which enables employees to confront higher management with their complaints should their immediate supervisors fail to resolve the problems.[6]

Bratt used the open door procedure approximately four times from 1971 through 1978, to complain of not receiving promotions and salary raises that were promised him or that he believed he deserved. Bratt also utilized the open door procedure

---

[6] The IBM manager's manual describes the open door procedure, in part, as follows: "Any employee who has a problem which has not been resolved to that employee's satisfaction by his or her immediate manager may bring the complaint or concern to the attention of higher management. . . . While the employee will normally choose to address an appeal first at the local level, the Open Door procedure makes available to an employee either direct or progressive access to any level of management in the Corporation. . . . Management should be sensitive to assure that no action is taken which may appear to be retaliation for an employee's appeal under the Open Door Policy."

to complain about an evaluation of his work, which was less than he thought merited. As a result, he came to deal with the defendant Wesley Liebtag, director of personnel programs for IBM in Armonk, New York. Although Liebtag told Bratt at their first discussion that the offensive work rating would be destroyed, this did not occur until Bratt went to see Liebtag a second time.

Bratt again utilized the open door procedure when he discovered that copies of suggestions that he had made for improving certain internal company practices were missing from his files. Bratt was informed that such suggestions had not been implemented. He was troubled that these proposals, as well as his work in general, were not appreciated. Bratt again confronted Liebtag, who told Bratt that any suggestions that he made were part of his job, and he should not be seeking personal recognition for such proposals.

After the unsuccessful meeting with Liebtag, Bratt told his supervisor that he was suffering from "bad nerves," headaches, and an inability to sleep. At the supervisor's suggestion, Bratt consulted with the defendant Dr. Nugent, a general practitioner retained by IBM. Following a routine physical examination, Dr. Nugent called Bratt's supervisor and expressed her opinion that Bratt was paranoid and should see a psychiatrist immediately. Bratt's supervisor relayed this information to her supervisor who, in turn, disclosed this to Liebtag. Liebtag made a memorandum for his file, summarizing the conversation.

Subsequently, Bratt's latest open door grievance was denied. Bratt was so informed. One of his supervisors then called Liebtag to relay Bratt's reaction. Liebtag summarized this conversation with the supervisor and his own impressions of Bratt's behavior in a memorandum which he forwarded to two IBM managerial supervisors. The memorandum stated that Bratt went into his supervisor's office with the letter denying his latest grievance. The supervisor observed that Bratt was distraught and crying. The supervisor made an appointment for Bratt with a psychiatrist. Liebtag wrote that this latest episode indicated that Bratt appeared to have a mental problem that went beyond IBM. He concluded that the corporate medical

director should communicate with Bratt's psychiatrist in order to obtain, within the company, an expert appraisal of Bratt's condition.

Although Liebtag averred in his affidavit that only two managerial supervisors received copies of this memorandum, Bratt contends that approximately sixteen people within IBM learned about his condition. Bratt also disputes the accuracy of his diagnosis as paranoid.

The manager's manual used by IBM provides, in relevant part, that "[p]rior approval of the employee . . . will be obtained before either disclosing or seeking confidential medical information, except in an emergency or where such disclosure is required by law." The manual also provides that confidential medical information will not be provided to "managers or Personnel" without an employee's prior consent.

Bratt's libel claim is based on Liebtag's distribution of the memoranda that he made concerning Bratt's mental condition. Bratt's claim for invasion of privacy under G. L. c. 214, § 1B, is premised on two grounds. First, that IBM violated Bratt's right of privacy by disclosing information about his use of the open door policy to personnel who should not have received this information. Second, that there was an improper disclosure of Dr. Nugent's description of Bratt as paranoid.

1. *Libel claim.* a. *Questions 1 and 2*[7] *(defendants' conditional privilege and the standard for abuse of the privilege).* Massachusetts courts have recognized that a person may possess a conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or

---

[7] Questions 1 and 2, certified by the Court of Appeals, are as follows: "1. In the case of a libel claim, when defendant has a conditional privilege, does loss of that privilege through 'unnecessary, unreasonable or excessive publication,' *see Galvin* v. *New York,* [N.H. & H.R.R.] 341 Mass. 293, 297-[2]98 (1960), require more than ordinary negligence? 2. If so, does abuse of the privilege through such publication result from something less than recklessness?"

Bratt contends that a conditional privilege may be lost through "unnecessary, unreasonable or excessive publication," on a showing that the defendants negligently published the information. The defendants claim that the privilege can be defeated only by a showing of at least recklessness in publishing the material.

furtherance of a legitimate business interest. See *Retailers Commercial Agency, Inc., petitioner,* 342 Mass. 515, 520 (1961); *Galvin* v. *New York, N.H. & H. R.R.,* 341 Mass. 293, 296 (1960).[8] See also Restatement (Second) of Torts § 594 comment f, at 266 (1977) (conditional privilege in making defamatory statements exists where publisher has lawful pecuniary interest in making the publication); comment e, at 265 (in determining whether an interest not given direct legal protection warrants protection by conditional privilege, courts should weigh publisher's interest in the defamatory matter, should it be true, against harm to plaintiff's reputation by disclosure of false information).

In *Galvin* v. *New York, N.H. & H. R.R., supra,* we recognized that an employer has a conditional privilege to use defamatory language to ascertain the identity of a person who allegedly stole goods from the business. We decided, however, that loud and repeated public accusations concerning the plaintiff constituted an abuse of the conditional privilege "by an unnecessary, unreasonable or excessive publication of the defamatory matter." Proof of "actual malice" was not a prerequisite to loss of the privilege. *Id.* at 297, 298.

We did not specifically state in the *Galvin* case whether negligence or recklessness was the threshold standard for determining whether a conditional privilege was lost by publication of defamatory matter. However, our description of the misconduct in *Galvin* as unreasonable or excessive, as well as something less than "actual malice," appears to favor recklessness or "malice in fact" as the standard. See also *Doane* v. *Grew,* 220 Mass. 171, 176 (1915) (conditional privilege in defamation action lost by proof of "malice in fact"; proof of "malice in fact" can be made in a number of ways).[9]

---

[8] This court also has recognized that there is a qualified, or conditional, privilege "where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it." See *Sheehan* v. *Tobin,* 326 Mass. 185, 190-191 (1950). Cf. Restatement (Second) of Torts § 596, at 274-276 (1977).

[9] One type of "malice in fact" described in *Doane* v. *Grew, supra,* was "the wilful doing of an injurious act without lawful excuse."

Massachusetts case law and the Restatement of Torts support the view that recklessness should be the minimum level of misconduct which results in loss of a conditional privilege. In *Retailers Commercial Agency, Inc., petitioner, supra,* we stated that a mercantile agency possesses a conditional privilege in communicating credit information to a client, since these agencies fulfil a legitimate business need. We stated also that an agency can abuse the privilege and become liable for transmitting defamatory credit information if the plaintiff proves that the communication was motivated by malice or was an unnecessary, unreasonable, or excessive publication. Further interpreting this rule, we stated that "[m]alice in uttering false statements may consist either in a direct intention to injure another, or in a reckless disregard of his rights and of the consequences that may result to him." *Id.* at 521, quoting *Gott* v. *Pulsifer,* 122 Mass. 235, 239 (1877). We also rejected the view that mere negligence would destroy the privilege: "This view . . . would place undue limitations on communications which the law seeks to protect." *Retailers Commercial Agency, Inc., petitioner, supra* at 522.

Our cases have recognized that a conditional privilege may be abused, and lost, in a number of ways. See Restatement (Second) of Torts § 599 comment a, at 286 (1977). In *Tosti* v. *Ayik,* 386 Mass. 721, 726 (1982), we stated: "One manner of such abuse is publication with knowledge of falsity or with reckless disregard of the truth." [10] In *Sheehan* v. *Tobin,* 326 Mass. 185, 192 (1950), we stated: "The rule long established by this court is 'that an occasion which would justify such a communication may be abused in such a manner as to deprive the party making it of the excuse of privilege. . . . The jury may . . . [find for the plaintiff] from proof that the defendant knew the charges to be false, or had no reason to believe them to be true [and] also from the terms in which the communica-

---

[10] In *Retailers* this court concluded that loss of the conditional privilege was warranted by evidence of recklessness in the preparation of a credit report, specifically by failing to check, and thus inaccurately reporting, several important facts in the plaintiff's credit history which were capable of precise verification. *Id.* at 522.

tion is made.' " *Id.,* quoting *Atwill* v. *Mackintosh,* 120 Mass. 177, 183 (1876).[11] Cf. *Ezekiel* v. *Jones Motor Co.,* 374 Mass. 382, 390-391 (1978) (defendant employer could lose privilege of communicating reasons for plaintiff's discharge to union grievance board if statements made out of actual malice or reckless disregard for plaintiff's rights). The policy reasons behind the recognition of a conditional privilege impel us to conclude that whatever the manner of abuse, recklessness, at least, should be required.

We therefore conclude that loss of a defendant's conditional privilege in a defamation action through "unnecessary, un-reasonable or excessive publication" requires proof that the

---

[11] A conditional privilege may thus be abused whether the fault lies in the determination of the truth of the information involved or whether the fault lies in improper publication of the defamatory matter. See Restatement (Second) of Torts § 599 comment a, at 286 (1977). The Restatement also takes the position that an abuse of the conditional privilege requires proof that the defendant knew that the defamatory statement was false or acted in reckless disregard of its truth or falsity. See Restatement (Second) of Torts § 592A, at 260 (1977). The Restatement logically posits that, to give effect to a conditional privilege, the standard for defining when it has been abused must entail proof beyond mere negligence, which is the standard necessary to maintain a defamation action absent a conditional privilege. *Id.* at 259-260. See generally *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849, 858 (1975) (if plaintiff is not a public official or a public figure, he may recover in libel action against publisher by proof of negligence in publishing defamatory falsehood). To apply the negligence standard to a conditional privilege would defeat the concept and its objective of promoting the free flow of information to further a legitimate private or public interest. Restatement (Second) of Torts, *supra* at 258.

The Restatement also appears to sanction a scienter prerequisite to finding an "excessive publication" which abuses the conditional privilege. See Restatement (Second) of Torts § 604, *supra* at 292. Section 604 states that one who "knowingly publishes the [defamatory] matter to a person to whom its publication is not otherwise privileged, abuses the privilege unless he reasonably believes that the publication is a proper means of communicating" the matter to a privileged person. *Id.* Comment b of § 604 states that excessive publication does not occur merely by an incidental publication of the information to unprivileged persons unless the communication is "unnecessary and unsanctioned by a custom based on ordinary necessities of business." *Id.* at 293. See also *New York & P.R. S.S. Co.* v. *Garcia,* 16 F.2d 734, 738-739 (1st Cir. 1926) (conditional privilege not lost although third persons overheard communication, provided their presence occurred in usual course of business affairs).

defendant acted recklessly. Accordingly, we answer the first question, "Yes." To the second question we respond, "No."

b. *Question 3* [12] *(conditional privilege where medical information published; standard for abuse of the privilege).* Massachusetts case law has not determined the issue whether the same standard for abuse of the conditional privilege would apply to a defendant employer when the defamatory material published is medical information. Precedents in other jurisdictions, as well as treatise authority, persuade us that the same standard should be used. Several courts have recognized that "[e]mployers . . . have a legitimate need . . . to determine whether or not their employees are professionally, physically, and psychologically capable of performing their duties." *Hoesl* v. *United States,* 451 F. Supp. 1170, 1176 (N.D. Cal. 1978), aff'd 629 F.2d 586 (9th Cir. 1980).[13] See *Cochran* v. *Sears, Roebuck & Co.,* 72 Ga. App. 458, 461 (1945). It appears equally settled that "a communication re-

---

[12] The third question with respect to the libel law claim is certified to us as follows: "3. Is the standard for abuse through excessive publication the same when the defamatory matter published is medical information?"

Bratt asserts that a negligence standard should apply to defamatory medical information disclosed by an employer. He claims that Liebtag, in disseminating the information concerning Bratt's medical condition, acted unreasonably and in contravention of express IBM policy, and thus abused his conditional privilege. The defendants maintain that the same standard for abuse of the conditional privilege should apply when the defamatory material is medical information.

[13] Of particular relevance to this case are two principles discussed by the *Hoesl* court. First, the court recognized that California and other State and Federal courts have "refused to hold defamatory on its face or defamatory at all an imputation of mental disorder which is made in an oblique or hyperbolic manner." *Hoesl* v. *United States, supra* at 1172. See *Fram* v. *Yellow Cab Co.,* 380 F. Supp. 1314, 1329-1330 (W.D. Pa. 1974) (under circumstances of case, statements characterizing plaintiff as "paranoid" and "schizophrenic" were not capable of defamatory meaning); *Correia* v. *Santos,* 191 Cal. App. 2d 844, 853 (1961) (statement describing plaintiff as a person who was unreasonable in his actions and his demands not defamatory).

We agree with this reasoning as well as with the important distinction made by the *Hoesl* court for medical opinions which conclude that an individual is mentally ill. "[I]n a case involving the unambiguous and considered publication to an employer that an employee has a specified mental disorder [which] . . . make[s] him unfit for his job," the court would "hold the publication defamatory on its face." *Hoesl, supra* at 1173.

specting the character of an employee . . . is qualifiedly privileged if made in good faith by a person having a duty in the premises to one who has a definite interest therein." *Leonard v. Wilson,* 150 Fla. 503, 505 (1942), quoting 33 Am. Jur. Libel § 173, at 168 (1941). See *Doane* v. *Grew,* 220 Mass. 171, 177-178 (1915) (person discussing character and capabilities of former servant with prospective employer has qualified privilege); *Sheehan* v. *Tobin, supra* at 190-191 (conditional privilege exists where publisher and recipient have common interest and communication reasonably calculated to further that interest). Restatement (Second) of Torts § 596, at 274-276 (1977) (same). Thus, courts have considered as conditionally privileged disclosures by employers of defamatory medical information concerning employees which is relevant to the employees' fitness to perform their work. See *Hoesl* v. *United States, supra* at 1176; *Leonard* v. *Wilson, supra* at 505, 509; *Cochran* v. *Sears, Roebuck & Co., supra.* We accept the principle that an employer can lose this privilege only if the plaintiff proves that the disclosure resulted from an expressly malicious motive, was recklessly disseminated, or involved a reckless disregard for the truth or falsity of the information.

Thus, our answer to question 3 is, "Yes."

2. *Breach of privacy claim.* a. *Question 1* [14] *(intracorporate communications and the right of privacy).* General Laws

---

[14] Certified question 1 under the invasion of privacy claim reads as follows: "Can disclosure of private facts about an employee among other employees of a corporation constitute sufficient publication to infringe the employee's right of privacy?"

Bratt claims that the disclosure of confidential medical information to managerial employees of IBM amounts to an unreasonable interference with his right of privacy, in violation of G. L. c. 214, § 1B. The defendants contend that the dissemination of Bratt's medical condition among only a few IBM employees does not constitute a sufficient disclosure to make out a prima facie claim under G. L. c. 214, § 1B. See note 15, *infra.*

We note that the assumption of the question, and of the arguments, is that publication is an essential ingredient of the tort of invasion of privacy. While this may not be true in every instance (see, e.g., *Cort* v. *Bristol-Myers Co.,* 385 Mass. 300, 307 & n.9 [1982]; *Themo* v. *New England Newspaper Publishing Co.,* 306 Mass. 54, 57 [1940], and cases cited), we answer the question in the context stated.

c. 214, §1B, inserted by St. 1974, c. 193, § 1, provides, in pertinent part, that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." This court has interpreted § 1B to proscribe the required disclosure of facts about an individual that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest. See, e.g., *Cort* v. *Bristol-Myers Co.,* 385 Mass. 300, 307-308 (1982); *id.* at 312 (Abrams, J., concurring) (reasonableness of requiring employee to disclose personal facts must be weighed against employer's valid business interests). Cf. *Commonwealth* v. *Wiseman,* 356 Mass. 251, 261-262 (1969) (prohibiting general public viewing of film depicting State mental patients to protect patients' privacy, yet allowing film to be shown in medical, academic, and legal settings, since public interest in improving State institutional facilities outweighs privacy interest).

Although we have never decided directly whether an intracorporate communication amounts to a sufficient publication under § 1B, our dicta in privacy cases and our decision on this issue in a libel case prove instructive. In *Bander* v. *Metropolitan Life Ins. Co.,* 313 Mass. 337, 348 (1943), we decided that a defamatory communication between agents of the same corporation, with reference to some aspect of corporate business, constitutes a publication for purposes of maintaining a libel action. Accord *Arsenault* v. *Allegheny Airlines, Inc.,* 485 F. Supp. 1373, 1379 (D. Mass.), aff'd, 636 F.2d 1199 (1st Cir. 1980), cert. denied, 454 U.S. 821 (1981). Cf. *Riceman* v. *Union Indem. Co.,* 278 Mass. 149, 151-152 (1932) (defendant surety company's transmittal of defamatory material in letter sent to different division of company sufficient to sustain allegation of publication). In *Cort* v. *Bristol-Myers Co., supra,* we indicated that to require intracorporate disclosure from employees of unreasonably intrusive, personal information in response to an employer's questionnaire would constitute a violation of the principles of G. L. c. 214, § 1B. *Id.* at 306-307, 308 n.9. Although no § 1B action could be maintained in the *Cort* case because questions asked were not inappropriate, and, possibly because the employees refused to answer, or gave

frivolous responses to, certain questions, we acknowledged that a factual situation could exist where an intracorporate disclosure of intrusive facts would give rise to an invasion of privacy claim. *Id.* at 307, 310. Cf. *Broderick* v. *Police Comm'r of Boston,* 368 Mass. 33, 44 (1975), cert. denied, 423 U.S. 1048 (1976) (answering police commissioner's questionnaire regarding alleged misconduct would not infringe police officers' privacy rights because officers relinquished these rights by publicly engaging in conduct under investigation).

We conclude that the disclosure of private facts about an employee among other employees in the same corporation can constitute sufficient publication under the Massachusetts right of privacy statute.[15]

Thus, we answer question 1, "Yes."

b. *Questions 2 and 3*[16] *(legitimate business communications balanced against right of privacy).* Massachusetts case law does not recognize a conditional privilege, as such, for legiti-

---

[15] The Restatement (Second) of Torts § 652D, at 383 (1977), defines a category of the tort which is analogous to § 1B as follows: "Publicity Given to Private Life. One who gives publicity to a matter concerning the private life of another is subject to liability . . . for invasion of his privacy . . . ." Comment a to § 652D states that " '[p]ublicity' . . . means that the matter is made public, by communicating it to the public at large."

Because G. L. c. 214, § 1B, focuses on interference with a person's privacy right, and our case law speaks of the disclosure of intrusive, personal facts as sufficient to constitute a violation of the statute, we depart somewhat from the Restatement's concept of the tort. See *Cort* v. *Bristol-Myers Co., supra* at 302-303; G. L. c. 214, § 1B. We thus reject the defendants' contention that communication of personal facts concerning Bratt only among employees of IBM would be an insufficient disclosure under § 1B.

[16] Questions 2 and 3, certified by the Court of Appeals, read as follows: "2. Is there a conditional privilege for legitimate business communications under the Massachusetts right of privacy statute? 3. If so, what are the standards for abuse of that privilege?"

Bratt contends that conditional privileges for an employer's legitimate business communications should be evaluated by balancing the employer's need to obtain the personal information against the employees' privacy rights. The defendants claim that a conditional privilege should exist for valid business communications. The defendants further contend, however, that we should follow case law from other jurisdictions which holds that where publicity of private facts is privileged in a defamation action, there is no actionable invasion of privacy.

mate business communications under the right of privacy stat-
ute. We have concluded previously, however, that because
§ 1B proscribes only unreasonable interferences with a person's
privacy, legitimate countervailing business interests in certain
situations may render the disclosure of personal information
reasonable and not actionable under the statute. See, e.g., *Cort*
v. *Bristol-Myers Co., supra* at 308, 310; *id.* at 312 (Abrams,
J., concurring); *Commonwealth* v. *Wiseman, supra* at 262. Cf.
*Hastings & Sons Publishing Co.* v. *Treasurer of Lynn,* 374
Mass. 812, 817-818 (1978) (even if payroll records of munic-
ipal employees considered highly personal information, their
disclosure, under public records statute, not unreasonable,
given paramount right of public to know salaries of public
servants).

We acknowledged in *Cort,* however, that "in the area of
private employment there may be inquiries of a personal nature
that are unreasonably intrusive and no business of the employer
and that an employee may not be discharged with impunity
for failure to answer such requests."[17] *Id.* at 308 n.9. In evalu-
ating whether the information sought from employees could
amount to an unreasonable interference with their right of pri-
vacy, we stated that the employer's legitimate interest in deter-
mining the employees' effectiveness in their jobs should be
balanced against the seriousness of the intrusion on the employ-
ees' privacy. *Id.* at 308. Cf. *Cefalu* v. *Globe Newspaper Co.,*
8 Mass. App. Ct. 71, 77 (1979) (right of privacy based on
concept that certain conduct of individual is personal and con-
fidential, and of no concern to public). An employer thus may
seek certain personal information concerning an employee
when the importance of the information in assessing the em-

---

[17] We noted that an employer is prohibited from seeking certain personal
data from an employee or prospective employee. See, e.g., G. L. c. 149,
§ 19B (use of lie detector tests by employers prohibited); G. L. c. 151B,
§ 4 (9) (unlawful practice for employer to seek information, in connection
with employing an individual or discharging employee, relating to, inter
alia, arrests which never resulted in convictions, first conviction for certain
minor crimes); G. L. c. 151B, § 4 (9A) (limitations on discharging employee
for failure to furnish information regarding admission to psychiatric hospi-
tal). *Cort, supra* at 306-307 n.8.

ployee's efficacy in his work outweighs the employee's right to keep this information private.[18]

In response to question 2, we conclude that no conditional privilege for legitimate business communications exists under the Massachusetts right of privacy statute. However, an employer's obtaining and disclosing of personal information concerning an employee may not amount to an unreasonable interference with the employee's right of privacy in violation of § 1B. In determining whether there is a violation of § 1B, it is necessary to balance the employer's legitimate business interest in obtaining and publishing the information against the substantiality of the intrusion on the employee's privacy resulting from the disclosure.[19]

Therefore, we answer question 2, "No," with qualifications. Based on our answer to question 2, we decline to answer question 3.

c. *Question 4*[20] *(employer's interest in medical information balanced against employee's privacy right and interest in*

---

[18] "The information that a high level or confidential employee should reasonably be expected to disclose is broader in scope and more personal in nature than that which should be expected from an employee who mows grass or empties waste baskets." *Cort* v. *Bristol-Myers Co., supra* at 308.

Courts in other jurisdictions also have decided that the disclosure of personal information, in certain situations, serves a legitimate business interest which outweighs a plaintiff's privacy right. See, e.g., *Harrison* v. *Humble Oil & Refining Co.,* 264 F. Supp. 89, 92 (D.S.C. 1967) (creditor may disclose the existence of an outstanding debt to the debtor's employer; this reasonable method of persuading payment does not constitute an actionable intrusion on the debtor's privacy); *Yoder* v. *Smith,* 253 Iowa 505, 510 (1962) (same); *Household Fin. Corp.* v. *Bridge,* 252 Md. 531, 543-544 (1968) (same).

[19] While it is arguable that the standard we state may, in some instances, be the same as that involved in a conditional privilege, we prefer to adhere to the language of our cases.

[20] Question 4, as certified by the Court of Appeals, states as follows: "Are the same privilege and standards for abuse applicable in the case of medical information?"

The question, as phrased, presupposes that we answered affirmatively questions 2 and 3 regarding the existence of a conditional privilege for business communications in an action under G. L. c. 214, § 1B. Although we conclude that no such conditional privilege exists under Massachusetts law, our concern with balancing an employer's right to disclose personal

*confidentiality of medical data disclosed to physician).* We have stated that no conditional privilege for legitimate business communications exists under our right of privacy statute. However, we would balance an employer's valid business interest with the employee's right to privacy in determining whether disclosure of private facts about an employee resulted in an actionable invasion of privacy. We would adhere to the same balancing test when medical information about an employee is disclosed by an employer.

We recognize a patient's valid interest in preserving the confidentiality of medical facts relayed to a physician.[21] See *Hannaway* v. *Cole,* 2 Mass. App. Ct. 847, 848 (1974).[22] "A

data about an employee with the employee's privacy rights applies with equal force when an employer discloses medical information about an employee. We thus include the following explanation of the balancing approach we would apply in such a factual situation.

[21] Bratt contends that he entered into a physician-patient relationship with Dr. Nugent when he initially consulted with her and she gave him a routine examination. He thus contends that her disclosure of confidential information concerning his medical condition amounted to a breach of his privacy right under G. L. c. 214, § 1B.

The defendants claim that we should apply the same conditional privilege and standard for abuse with respect to the right of a physician employed by a company to disclose medical information about an employee to the employer.

When an employer retains a physician to examine employees, generally no physician-patient relationship exists between the employee and the doctor. See *Jones* v. *Tri-State Tel. & Tel. Co.,* 118 Minn. 217, 219 (1912). See also *Hoesl* v. *United States,* 451 F. Supp. 1170, 1176 (N.D. Cal. 1978) (when physician employed by employer to evaluate fitness of employees, physician's duties run primarily to employer). Physicians in such a situation, however, must still exercise reasonable care and skill in their relationship with the employees. See *Beadling* v. *Sirotta,* 41 N.J. 555, 561-562 (1964); *DuBois* v. *Decker,* 130 N.Y. 325, 332 (1891). Cf. *Harriott* v. *Plimpton,* 166 Mass. 585, 588 (1896) (although no physician-patient relationship existed between plaintiff and defendant doctor, plaintiff could maintain negligence action against doctor who merely examined plaintiff and relayed improper diagnosis of venereal disease to plaintiff's future father-in-law, which resulted in breaking of plaintiff's engagement).

[22] There is no evidentiary common law or statutory privilege as to confidential communications between a patient and a physician in Massachusetts. See P.J. Liacos, Massachusetts Evidence 186-188 (5th ed. 1981). There is, however, a psychotherapist-patient privilege created by G. L. c. 233, § 20B. Section 20B does not appear applicable to the facts in this case. On

patient should be entitled to freely disclose his symptoms and condition to his doctor in order to receive proper treatment without fear that those facts may become public property. Only thus can the purpose of the relationship be fulfilled." *Hague v. Williams*, 37 N.J. 328, 336 (1962).[23] Although "ordinarily a physician receives information relating to a patient's health in a confidential capacity . . . , except where the public interest or the private interest of the patient so demands[,] . . . disclosure may, under . . . compelling circumstances, be made to a person with a legitimate interest in the patient's health." *Id.*

In determining whether an employee's privacy right under § 1B is violated by his physician's disclosure of personal medical data to his employer, we would consider the degree of intrusion on privacy and the public interest in preserving the confidentiality of a physician-patient relationship balanced against the employer's need for the medical information. See, e.g., *Hague v. Williams, supra* (where patient's physical con-

the other hand, in many of our statutes, the Legislature implicitly has recognized the patient's interest in the confidentiality of personal information disclosed to a physician. See, e.g., G. L. c. 112, § 12G (certain disclosures of medical information about a patient, required in the public interest, will not subject physician to any civil or criminal liability); G. L. c. 111, § 70 (inspection of hospital records available, inter alia, on proper judicial order or by proper authorization from department head with jurisdiction over records); G. L. c. 111, § 70E (providing for confidentiality of hospital records to extent provided by law); G. L. c. 111, § 110B (required reports on children afflicted with Reyes syndrome to be released only to authorized persons); G. L. c. 111, § 111B (record of malignant diseases shall be kept confidential in accordance with § 70); G. L. c. 111, § 202 (records of fetal deaths to be kept confidential and released only upon request of parent, guardian, or certain designated governmental agencies); G. L. c. 111D, § 6 (reports of infectious diseases to be kept confidential). Cf. 243 Code Mass. Regs. § 2.06 (13) (1979).

[23] The Hippocratic oath prescribes, in relevant part, that when physicians obtain information in the course of their professional practice "which ought not to be spoken of abroad, [they] will not divulge [the information] as reckoning that all such should be kept secret." The Principles of Medical Ethics promulgated by the American Medical Association provide, in Principle 9, that "[a] physician may not reveal the Confidences entrusted to him in the course of medical attendance, or the deficiencies he may observe in the character of patients, unless he is required to do so by law or unless it becomes necessary in order to protect the welfare of the individual or of the community."

dition made basis of a legal claim, physician's extrajudicial disclosure warranted so as to ensure just result). *Horne* v. *Patton,* 291 Ala. 701, 708-709 (1973) (physician's duty not to make extrajudicial disclosures of medical data concerning plaintiff subject to exceptions where public interest or interests of patient warrant disclosure); *Clark* v. *Geraci,* 29 Misc. 2d 791, 793-794 (N.Y. Sup. Ct. 1960) (physician's duty to government and, in any event, plaintiff's consent to have doctor reveal part of his medical history to government employer justified doctor's disclosure of plaintiff's alcoholism). As we already noted, an employer may have a substantial and valid interest in aspects of an employee's health that could affect the employee's ability effectively to perform job duties. See, e.g., *Pitcher* v. *Iberia Parish School Bd.,* 280 So. 2d 603, 608 (La. Ct. App. 1973) (school board could require teachers to provide annual certification by physician of their fitness to teach); *Clark* v. *Geraci, supra* at 793 (government employer may have valid interest in medical facts concerning employee which affect his capacity to do his job). In response to question 4, we conclude that when medical information is necessary reasonably to serve such a substantial and valid interest of the employer, it is not an invasion of privacy, under § 1B, for a physician to disclose such information to the employer.