Zobel, J.
Plaintiff alleges violation of privacy, G.L.c. 214, §1B; violation of his civil rights, G.L.c. 12, §111; violation of “public policy”; and interference with advantageous contractual relations. Defendants now move to dismiss, Mass.R.Civ.P. 12(b)(6). Because the parties here have submitted material outside the Complaint, the Court treats the instant application as a motion for summary judgment, Mass.R.Civ.P. 12(b).
From September 1984, until May 26, 1997, Plaintiff worked intermittently as a driver for Defendant Commonwealth Limousine Service, Inc. (“CLS”). In March 1997, having talked to other drivers and local union officials about organizing CLS employees, Plaintiff began distributing union authorization cards.
On May 26, 1997, Defendant Rutter gave Plaintiff written notice that he was being fired for failing to come to work when assigned; failing to abide by minimum grooming standards; poor driving habits; submitting unauthorized time slips; charging personal expenses to the company credit card; and failing to request vacation time through appropriate channels. Rutter then posted the termination letter in a public area on CLS property.
Plaintiff filed a complaint with the National Labor Relations Board (“NLRB”) alleging that he was fired for seeking to unionize the CLS employees. Concluding that Defendants’ actions violated the National Labor Relations Act (“NLRA”), the NLRB validated the complaint.
Publicly posting Plaintiffs termination letter violated the statute, G.L.c. 214B, §1B, only if the posting unreasonably, substantially, or seriously interfered with his privacy. Absent a genuine, countervailing interest, disclosing highly personal or intimate facts about an individual offends the law. Bratt v. International Business Machines Corp., 392 Mass. 508, 518 (1984). An employer unreasonably interferes with an employee’s privacy right by disclosing the employee’s personal information without justification. See Mulgrew v. Taunton, 410 Mass. 631, 637 (1991); Bratt v. International Business Machines Corp., supra, at 510. Whether the information which Defendants posted amounted to the kind of “highly personal or intimate” facts, id., whose revelation — in the business context— constituted invasion of privacy is, under the circumstances, another jury-triable issue.
Informing subordinates of a co-worker’s performance problems could constitute an unprivileged invasion of privacy; the privilege rests on the employer’s business interest in the employee’s job-fitness, Petsch-Schmi v. Boston Edison Co., 914 F.Sup. 697, 707 (D.Mass. 1996), and by extension, in the business legitimacy of the concern for the enterprise generally, balanced against the nature and substantialiiy of the intrusion, Bratt v. International Business Machines Corp., supra, at 510. The privilege, in short, is conditional. Thus here, one cannot say, as matter of law, that Plaintiff has not raised a genuine issue of material fact as to Defendants’ violating his privacy.
Defendants claim that posting the letter did not violate Plaintiffs privacy because the action served legitimate business interests: (1) Deterrence — by publicizing the consequences of failure to follow company policies; and (2) Informing — by notifying employees that Plaintiff no longer worked for CLS, and thus that any future presence on the company’s premises would lack authorization. However, as the earlier discussion has shown, these contentions raise genuine material issues of fact precluding summary judgment.
Defendants further assert that they did not violate Plaintiffs privacy because the disclosure was internal and not to the public at-large. Intra-corporate disclosures, however, can constitute an unwarranted invasion of privacy. Bratt v. International Business Machines Corp., supra, at 509-10.
Plaintiffs claims that by discharging him for his unionizing efforts Defendants violated his civil rights and contravened public policy fall to the NLRB’s exclusive jurisdiction to regulate unfair labor practices. San Diego Building Trades Council v. Garmon, 359 U.S. *494 236, 245 (1959); Attorney-General v. The Travelers Insurance Co., 385 Mass. 598, 611 (1982).
It is true that the NLRA does not preempt disputes of peripheral concern to the national labor relations scheme. San Diego Building Trades Council v. Garmon, supra, at 243-44. This case, however, falls squarely within the NLRB’s exclusive mandate. Plaintiff cites to the contrary Blanchette v. School Committee of West-wood, 427 Mass. 176, 180 (1998), and Massachusetts Electric Co. v. MCAD, 375 Mass. 160, 174 (1978). These decisions do not support him. They deal either with gender discrimination, id., or the preclusive effect of a labor arbitration award on a subsequent state court action, Blanchette v. School Committee of Westwood, supra, at 180.
Plaintiff also argues that the NLRA does not preempt his civil rights’ claim because the Massachusetts Civil Rights Act, G.L.c. 12, §111 treats interests so deeply rooted in local feeling and responsibility that they should remain within the state courts’ ambit. Farmer v. United Brotherhood of Carpenters & Joiners, 430 U.S. 290, 299-00 (1977); San Diego Building Trades Council v. Garmon, supra, at 243-44; Tosti v. Ayik, 386 Mass. 721, 727 (1982).
Plainly, the NLRA does not preempt a state-rooted claim for damages arising out of intentional infliction of emotional distress in a labor-dispute context, Farmer v. United Brotherhood of Carpenters & Joiners, supra, at 299-00, because a state has a substantial and deeply local interest in protecting its citizens from that kind of conduct, id. at 304, an interest which does not significantly interfere with the federal scheme of labor regulation, id. at 302; indeed, the resolution of the state interest rests on considerations disparate from those underlying the national concern, id. at 304.
In the case at bar, however, Plaintiff seeks relief for the identical misconduct which underlies the NLRB proceedings: discharge for attempting to organize employees. The NLRB has already ruled (favorably to Plaintiff). A state court could (and should) add nothing to the controversy.
Plaintiff alleges Rutter’s intentional interference with his employment contract. Unfortunately for Plaintiff, Rutter, the primary owner of CLS, is its president and the only shareholder involved with the dally operations of the company. “Discharge of an employee in some circumstances may subject the employer to liability for breach of contract or for wrongful discharge, but the employer cannot be liable for tortiously interfering with the employee’s employment contract with the employer.” Mailhoit v. Liberty Bank and Trust Co., 24 Mass.App.Ct. 525, 528 (1987); Clement v. Rev-Lyn Contracting Co., 40 Mass.App.Ct. 322, 323 (1996).
ORDER
Accordingly, it is Ordered that Defendants’ Motion to Dismiss be, and the same hereby is, Allowed as to Counts II, III, and IV, and Denied as to Count I.