Sosman, J.
Plaintiff Randolph Pyrcz has brought the present action against his former employer, Bradford College, alleging handicap discrimination and interference with his right to privacy. Defendants have moved for summary judgment on the grounds that (1) plaintiffs successful application for Social Security disability benefits covering the same time period conclusively establishes that he was incapable of performing the essential functions of his job, and (2) his employer had a legitimate interest in Pyrcz’s medical condition such that its communications with Fyrcz’s treating physicians were not an unreasonable invasion of his privacy interests. For the following reasons, defendants’ motion is ALLOWED.
Facts
Randolph Pyrcz was hired in January 1991 as a sergeant in the Campus Safety Department at Bradford College. In January 1994, Pyrcz was promoted to the job of Director of the Department.
In the winter of 1996, while in the midst of a grave family crisis stemming from the breakup of his marriage, Pyrcz became depressed and suicidal. During the workday on February 8, 1996, Pyrcz had what *420 appeared to be some form of nervous breakdown. Pyrcz was transported from the Dean’s office to Lowell General Hospital and hospitalized there for two days.[1] He was then transferred to Deaconess-Waltham Hospital for further inpatient treatment. Pyrcz was discharged from full inpatient treatment on February 16, 1996 and thereafter participated in a partial hospitalization program. As of February 23, 1996 Pyrcz was discharged from that partial hospitalization program to be followed up with outpatient therapy and support groups.
On or around February 23, 1996, Pyrcz advised the Dean of Bradford College, defendant Trey Williams, that he had been “cleared” to return to work.[2] On or about February 23, 1996, Williams called Pyrcz’s doctors, who advised Williams that Pyrcz wanted to “transition back to work” and that the “structure of work may be beneficial” to Pyrcz. Pyrcz claims (Complaint ¶ 16) that he was “ready to return to his position with no restrictions after February 23, 1996.” Notwithstanding Pyrcz’s alleged request to return to work without restrictions, he was placed on medical leave for another month.
After that month of medical leave, Pyrcz met with Williams twice, following which Williams placed Pyrcz on medical leave for another month. On May 6, 1996, Pyrcz submitted a written request, asking that he be allowed to return to work. He was not allowed to return, and his employment was terminated on May 15, 1996.
On February 7, 1997, Pyrcz filed an application for Social Security disability benefits. The nature of his claimed disability was major depression and suicidal tendencies. In his application, Pyrcz claimed that he “became unable to work because of my disabling condition on February 8, 1996.” Pyrcz’s claim for benefits was initially denied and denied again on reconsideration. Pyrcz then filed a request for hearing, which was held before an Administrative Law Judge (ALJ) on July 22, 1998.
On October 26, 1998, the ALJ ruled in Pyrcz’s favor, finding that he had been disabled since February 8, 1996. The ALJ’s findings recite that Pyrcz began treatment back in December 1995 with Dr. Sarah Quinn, that Dr. Quinn continued to treat Pyrcz up until the date of his application for benefits, that his symptoms included “severe mood swings, depression, angry outbursts, and a preoccupation with homicidal thoughts,” that his diagnoses were major depression and impulse control disorder, and that in Dr. Quinn’s opinion, “(f)rom 12/6/95-2/5/97, [Pyrcz] was not able to function at any work due to his psychiatric impairments.” Other medical consultants who examined Pyrcz after his application was filed concurred with Quinn’s assessment that Pyrcz suffered “severe and persistent” depression, including homicidal and suicidal ideation. Pyrcz had considerable limitations of function as a result, such that the ALJ found that he was incapable of returning to his former employment and could not make a vocational adjustment to any other work.[3] Thus, the ALJ concluded that Pyrcz had been under a disability, as defined in the Social Security Act, since February 8, 1996 and that he was entitled to disability benefits retroactive to that date.
Discussion
I. Handicap discrimination
As part of his prima facie case, Pyrcz must prove that he was a qualified handicapped person, capable of performing the essential functions of his job as Director of the Campus Safety Department or capable of performing those functions with reasonable accommodation. Defendants contend that Pyrcz’s successful application for Social Security disability benefits covering the same time period at issue in this case precludes him from making that prima facie showing.
An application for some form of disability benefits may, if it demonstrates that there is no contested issue of material fact, provide the basis for granting summary judgment in a handicap discrimination case. The mere filing of an application for benefits does not automatically estop plaintiff from pursuing a claim of handicap discrimination. Rather, the focus remains on whether the specific facts surrounding the claim for benefits — its timing, its basis and the factual statements made therein by plaintiff — have eliminated any dispute of material fact with respect to Plaintiffs ability to perform the essential functions of his job. Labonte v. Hutchins & Wheeler, 424 Mass. 813, 817-19 (1997). See also D’Aprile v. Fleet Services Corp., 92 F.3d 1 (1st Cir. 1996).
In a recent case considering whether an application for Social Security disability benefits estops a plaintiff from pursuing a federal claim for handicap discrimination under the Americans with Disabilities Act, the Supreme Court concluded that a plaintiff must proffer “a sufficient explanation” to overcome the “apparent contradiction” between the two claims. Cleveland v. Policy Management Systems Corp., 119 S.Ct. 1597, 1603 (1999). Pointing out various reasons why a finding of disability for purposes of Social Security disability benefits would not always or necessarily be factually inconsistent with a determination that the plaintiff could perform the essential functions of a particular job (or at least could do so with reasonable accommodation), the Court held that plaintiff s explanation of how the Social Security disability benefits application could be reconciled with the specific facts of her handicap discrimination claim sufficed to defeat a summary judgment motion. The specific explanation that the Court found sufficient was that the plaintiff had requested accommodation for her disability, had been denied accommodation, and had subsequently been terminated. Analysis of a person’s disability under Social Security regulations does not take into account any issues of “accommodation.” The Social Security Administration only considers whether a per *421 son can perform his “past relevant work.” It does not consider whether the claimant could do so with reasonable accommodation. Thus, a claim that one is disabled for purposes of Social Security can be logically consistent with the claim that the plaintiff suffered handicap discrimination after his request for “reasonable accommodation” was turned down.[4]
In the present case, Pyrcz has not alleged any failure or refusal to provide reasonable accommodation, thus distinguishing his claim from those at issue in Cleveland, Labonte and D’Aprile. Indeed, his Complaint (¶12 and ¶ 16) expressly alleges that he was “cleared to work with no restrictions on February 23, 1996" and that he informed the Dean ’’that he would be ready to return to his position with no restrictions after February 23, 1996." Pyrcz’s affidavit, submitted in opposition to this motion, states the same: “I was cleared to return to work by my doctors with no restrictions on February 23, 1996" and ”1 specifically told Dean Williams that I would be ready to return to my position with no restrictions after February 23, 1996, based on my doctors’ orders." There is no evidence that Pyrcz requested some accommodation from Bradford College that Bradford College denied, or that he needed any form of accommodation that Bradford College then failed to provide. His claim is simply that he was able to return to work as of February 23, 1996 and that his treating physicians had so opined by that date.[5] Thus, Pyrcz can not bring himself within the line of cases that have reconciled the handicap discrimination claim with the disability benefits application by reference to a denial of reasonable accommodation.
Pyrcz attempts to reconcile his Social Security disability claim with his allegation of handicap discrimination by arguing that the loss of his job at Bradford College, in combination with the other stresses in his life, caused the disabling condition that led to his Social Security disability application and ultimately the award of his Social Security benefits. However, that is not what his Social Security application said, as to either the time or the cause of his disability, and that is not the basis on which his disability benefits were awarded. In his Social Security disability benefits application, Pyrcz claimed to have been disabled as of February 8, 1996 — i.e., as of the date of the on-campus nervous breakdown that led to his hospitalization. He did not allege a date of onset of this disability that postdated the college’s decision to terminate him. The ALJ determined that Pyrcz had in fact been disabled as of February 8, 1996, well prior to his termination or any of the discussions with Williams that led to his termination, and benefits were therefore awarded retroactive to that date.[6]
The court is mindful of the fact that a plaintiff in Pyrcz’s position, unemployed and presumably facing severe financial pressures, can not realistically afford to delay pursuit of disability benefits in order to await the outcome of his handicap discrimination claim. However, when the factual statements made and the theory of disability advanced before some other agency is inherently inconsistent with an essential element of plaintiffs handicap discrimination claim, and where that other agency has indeed ruled in favor of plaintiff on the very facts and theories that are inherently inconsistent with the handicap discrimination claim, that successful claim for disability benefits does eliminate any disputed issue of material fact as to the handicap discrimination claim. Pyrcz stated, and the ALJ found, that Pyrcz could not perform his job as of February 8, 1996 and that he remained unable to do that job up through at least the date of his administrative hearing in July 1998. That claim and that finding can not be reconciled with the assertion that Pyrcz was able to return to work “without restrictions” as of February 23, 1996 or that he was capable of performing the essential functions of his job at the time he was terminated in May 1996.
n. Invasion of Privacy
Pyrcz complains that defendant Trey Williams had “unauthorized contact” with Pyrcz’s treatment providers to obtain information about his medical condition and that such contact “constitutes an unreasonable, substantial and serious interference with his privacy.” Complaint, ¶48. He thus seeks to recover under G.L.c. 214, §1B, which prohibits such interference.
However, “because §1B proscribes only unreasonable interferences with a person’s privacy, legitimate countervailing business interests in certain situations may render the disclosure of personal information reasonable and not actionable under the statute.” Bratt v. International Business Machines Corp., 392 Mass. 508, 520 (1984). Defendants argue that they had a legitimate interest in Pyrcz’s condition such that inquiries of his physicians were not unreasonable.
Pyrcz acknowledges that defendants ultimately had a legitimate interest in making inquiries of his physicians, but claims that that interest did not arise until Pyrcz himself sought to return to work. He claims that the inquiries from Williams were made prior to Pyrcz’s requests to return to work and that the inquiries were therefore not reasonable.
The factual basis for Pyrcz’s argument is contrary to the entries in his medical records. Those records indicate that Pyrcz himself spoke with his “boss” (Williams) on the evening of February 22, 1996 to “plan a return to work.” The records then note that Williams spoke with Pyrcz’s doctor the next day, February 23, to discuss Pyrcz’s fitness to return to work. Pyrcz has no evidence to suggest that any conversation between Williams and the physicians occurred prior to Pyrcz's own February 22 inquiry about a return to work.[7]
Nor would this court impose the rigid timing constraint suggested by Pyrcz. Whether the employee has or has not yet specifically requested to return to work, an employer has a legitimate interest in ascertaining *422 a disabled employee’s prospects for return. There is an obvious need to know how long the employee is likely to be out, whether there will be restrictions on his activities when he returns, etc. An employer does not unreasonably interfere with a disabled employee’s privacy merely by making inquiry on such subjects. Indeed, employers commonly insist on verification from employees’ physicians with respect to the conditions that are preventing an employee from working. In the present case, Pyrcz’s breakdown had occurred at work, and the school therefore already knew that Pyrcz was suffering some form of serious mental illness. A call from Williams to Pyrcz’s doctor to ascertain the progress of his recovery and his prospects for return to work was not an invasion of Pyrcz’s privacy. Pyrcz was, at least by February 22, seeking to return to work, and his employer had a legitimate interest in investigating his fitness. As a matter of law, inquiries made to Pyrcz’s physicians (which the physicians could decline to answer if they thought the subject was confidential or not in the patient’s best interests to disclose) were not an unreasonable, substantial or serious interference with Pyrcz’s privacy.
ORDER
For the foregoing reasons, defendants’ motion for summary judgment is ALLOWED and it is hereby ORDERED that judgment be entered in favor of defendants.

 The emergency room physician at Lowell General Hospital filed an application for temporaiy hospitalization under G.L.c. 123, §12, opining that Pyrcz posed a likelihood of serious harm to himself.

 The medical records reflect that, on February 23, Pyrcz reported that he had had a meeting with his “boss” the previous evening (i.e., February 22) “to plan a return to work.”

 The ALJ recites that Pyrcz was unable to concentrate, unable to maintain even an “ordinary routine” without supervision, unable to work with others, unable to interact with the public, unable to get along with co-workers “without distracting them or exhibiting behavioral extremes,” unable to maintain socially appropriate behavior and standards of neatness and cleanliness," and unable to “complete a normal workday or week without interruption from psychologically based symptoms.”

 In Labonte and D’Aprile, the Supreme Judicial Court and the First Circuit similarly analyzed that a handicap discrimination claim based on refusal to provide reasonable accommodation was not inherently inconsistent with the plaintiffs claim for disability insurance benefits.

 The medical records submitted by Pyrcz reflect some discussion of Pyrcz “transitioning" back to work on a part-time schedule for “the next few weeks.” Nothing in Pyrcz’s complaint or in his affidavit suggests that Pyrcz asked for any part-time schedule or that Bradford College refused this form of accommodation by insisting that he immediately return to work full-time.

 Indeed, the ALJ noted that Pyrcz’s treating therapist viewed him as disabled from work dating back to December 5, 1995. Pyrcz had continued reporting to work for two months thereafter, culminating in his breakdown and hospitalization on February 8, 1996. Because he had been working up to February 8, 1996, he would not be eligible for disability benefits prior to that date, even though his treating physician was of the opinion that Pyrcz was not capable of performing his job as of December 1995.

 Obviously, Pyrcz’s physicians viewed Williams’ inquiries as appropriate and/or they understood that Pyrcz consented to such disclosures, otherwise they would have refused to discuss any confidential information concerning Pyrcz’s condition. Pyrcz has not sued the health care providers who allegedly gave Williams confidential information about his condition. If the doctors’ response to Williams’ inquiries revealed confidential information without Pyrcz’s consent, Pyrcz’s claims should be brought against them, not against Williams.