Connolly, J.
This matter came before the Court for hearing on the plaintiff s Motion for an Order Compelling Production of a Document by a Third-party Deponent (namely, the Archdiocese of Boston).
The case arises out of allegations that the deceased, Rev. William H. Morgan, sexually molested his cousins approximately 35 years ago. Father Morgan was referred by Bishop Alfred Hughes to Kathy M. Sanders, M.D., an Instructor in Psychiatry at the Massachusetts General Hospital, “for a psychiatric evaluation after accusations from his cousins concerning sexual abuse approximately 35 years ago.” The nature of the report was “to assess him [Father Morgan] psychologically in reference to the authenticity of these accusations, his sexuality, and current functioning within priestly celibacy.” The Court, after review of this report, in camera, construes this report to be an employment evaluation, said report renders a psychiatric diagnosis or diagnoses for Father Morgan, past, present and future, which was used to assess Father Morgan’s future employability by the Archdiocese. Father Morgan was evaluated on December 23, 1992, by Doctor Kathy M. Sanders, and underwent psychological testing by Mark Blais, Ph.D., on December 31, 1992. As a result thereof, Doctor Sanders authored a three-page report, dated February 22, 1993, which was sent to Bishop Hughes at the Chancery, with copies to Bernard Cardinal Law, Father John McCormick and Father William Morgan. This report has been furnished to the Court, for an in camera review, and said report has been ORDERED impounded.
The Archdiocese of Boston, pursuant to deposition subpoena, has already produced the following documents:
1. Sexual Misconduct of Archdiocese of Boston Policy, effective on January 14, 1993 (six pages) with a list of the Members of the Review Board.
2. Report and Recommendation of the Review Board concerning Father Morgan (3 pages).
Document #2 above, reflects that both the Delegate and the Review Board recommended that Father Morgan be asked to resign his pastorate. These recommendations were accepted and ordered implemented by Bernard Cardinal Law on January 9, 1995.
The Review Board’s case summary, dated March 8, 1998, reveals the following:
The priest underwent an outpatient psychiatric assessment. He is reported as being guarded, but sufficiently revealing. He uses denial and repression. Alcohol may obscure his memory (he drank at that time). The priest tends to be histrionic.
In this case, the defendant, Gertrude Geran, Executrix of the Estate of Father Morgan, is asserting the psychotherapist-patient privilege regarding Doctor Kathy Sanders’ report on behalf of Father Morgan. The privilege is established by G.L.c. 233, §20B, and it survives the death of its beneficiary, the patient. District Attorney for Norfolk District v. Magraw, 417 Mass. 169, 172-73 (1994). The psychotherapist-patient privilege may be asserted or waived by the administrator or executor of the deceased patient. Brooks v. Holden, 175 Mass. 137, 141 (1900), District Attorney for Norfolk District v. Magraw, 417 Mass. 169, 172 (1994). The Archdiocese of Boston (the third-party deponent) and holder of the document, through counsel, was present at a hearing on this matter, and indicated that the Archdiocese of Boston stands indifferent on this motion.
The first question that must be determined is whether Father Morgan was a patient of Doctor Sand *588 ers, and if so, whether a psychotherapist-patient relationship existed.
There is no question that Doctor Sanders comes under the definition of a psychotherapist as set out in §20B (“a person licensed to practice, who devotes a substantial portion of his [her] time to the practice of psychiatry”).
A patient is described as “a person who, during the course of diagnosis or treatment, communicates with a psychotherapist.” Communications is defined as “conversations correspondence, actions and occurrences relating to diagnosis or treatment... regardless of the patient’s awareness of such conversations, correspondence, actions and occurrences, and any records, memoranda or notes of the foregoing.’’
While it is clear to this Court that Father Morgan was not examined by Doctor Sanders for treatment, the question arises whether he underwent the examination and psychological testing for purposes of diagnosis, which would be a necessary prerequisite to render future employability opinions for which he was referred to Doctor Sanders. It appears that Father Morgan was referred, at least in part, if not in whole, for diagnosis (“for a psychiatric evaluation after accusations ... to assess him [Father Morgan] psychologically in reference to the authenticity of these accusations, his sexuality and current functioning within priestly celibacy”).
From this above discussion, it may appear that a psychotherapist-patient relationship existed, however there is one further point that must be considered. When an employer retains a psychotherapist to examine an employee for purposes relating to the employment, does a physician-patient relationship exist between the employee and doctor? The Supreme Judicial Court, in apparent dicta in Bratt v. I.B.M. Corp., 392 Mass. 508, 522, fn. 21 (Liacos 1984), states as follows:
When an employer retains a physician to examine employees, generally no physician-patient relationship exists between the employee and the doctor. See Jones v. Tri-State Tel & Tel. Co., 118 Minn. 217, 219 (1912). See also Hoesl v. United States, 451 F.Sup. 1170, 1176 (N.D. Cal. 1978) (when physician employed by the employer to valúate fitness of employees, physician’s duties primarily to employer).
In Jones v. Tri-State Tel. & Tel. Co., 118 Minn. 217, 219(1912),a physician employed by the employer took an x-ray of plaintiffs sacroiliac joint, causing severe burning, and paralysis of the bowels. That court held that ”[t]he relation of physician and patient did not exist between Dr. Roberts and plaintiff.” The Court in Jones distinguished that case from one “relative to the liability of a physician or surgeon to his patient, or to the liability of a master who employs a physician to treat his servant.” (Emphasis added.) Because the employer wanted the x-ray for his own purpose, the doctor was a servant of the defendant and no physician-patient relationship existed between the doctor and the plaintiff.
In this case, there is no evidence that Doctor Sanders was treating Father Morgan. Basically here, we have a situation where Doctor Sanders was asked by Bishop Hughes to conduct an evaluation of Father Morgan for an eventual decision on what future course the Archdiocese should take in their future dealings with him. While it is apparent that Doctor Sanders did make, at least in part, a “diagnosis,” it was only to form the basis of her findings relating to Father Morgan’s suitability for continued service as a priest in the Archdiocese. This Court can find no other reasonable purpose for which the examination(s) were performed. It should be noted, as indicated in the papers of this case and by counsel in oral argument on this motion, that Father Morgan never sought or had any psychiatric or psychological treatment, before or after the interview with Doctor Sanders. The Court therefore finds that Father Morgan was sent to Doctor Sanders for evaluation, in order to allow the Sexual Misconduct Review Board and Cardinal Law to make informed decisions on Father Morgan’s future role, if any, in the Archdiocese. Any diagnosis(es) made by Doctor Sanders were only tangential to allow the Archdiocese to make future employment decisions regarding Father Morgan. Therefore, no psychotherapist-patient privilege was created and the plaintiff is entitled to the production, inspection and photocopying of Doctor Sanders’ three-page report.
It should be noted that the plaintiffs counsel (assuming that the above argument does not prevail — i.e., no privilege when psychiatrist/psychologist is examining for an employer) also urges upon the Court an additional argument that the report should be produced, under G.L.c. 233, §20B, paragraph (d). This section defines communications to which the patient-psychotherapist privilege does not apply. Section (d) provides as follows:
(d) In any proceeding after the death of a patient in which his mental or emotional condition is introduced by any party claiming or defending through or as a beneficiary of the patient as an element of the claim or defense, and the judge or presiding officer finds that it is more important to the interest of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected.
It is clear that the mental or emotional condition of Father Morgan will be important, and is a contested issue in this case. Father Morgan is deceased. Therefore, the issue for the Court to decide is whether “it is more important to the interest of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected.”
*589 These incidents allegedly involving two cousins of Father Morgan, occurred thirty-five years ago, and Father Morgan is deceased. The plaintiff has not and obviously will never be able to take his oral deposition. The plaintiff will have a very difficult time providing corroboration of his testimony because of the passage of time. However, the report in question was written contemporaneously with the accusations being made to the Chancery in or about 1992.
On the other hand, “the purpose of the statute is to protect justifiable expectations of confidentiality that people who seek psychotherapeutic help have a right to expect.” (Emphasis added.) Commonwealth v. Clancy, 402 Mass. 664, 667 (1988). In the present case, Father Morgan did not seek psychotherapeutic help, but underwent the examination at the request of the Archdiocese for its future employability decisions. The privilege applies to communications between the patient and psychotherapist. “The privilege does not protect the existence of the fact of a hospital admission, dates of hospitalization or even the purpose of the admission, if such a purpose does not implicate communications between the witnesses and psychotherapist, though conceivably such purpose may require disclosure of the diagnosis and in that instance the purpose is within the privilege.” Commonwealth v. Clancy, 402 Mass. 664, 667 (1988).
In the present case, Father Morgan’s only contact with a psychotherapist came from the interviews with Doctor Sanders which were ordered by Bishop Hughes. Due to the passage of time, the plaintiff is put in a nearly impossible position without the benefit of the report, because the only available evidence of Father Morgan’s mental state is contained in said report.
In balancing all the facts and interests, the Court also orders the production of said report of Doctor Sanders, for the reason set out in Section (d) of Ch. 233, §20B, namely that “it is more important to the interest of justice that the communication be disclosed than that the relationship between [the deceased] patient and psychotherapist be protected.” Without said report, the plaintiff will have a very difficult time presenting a convincing case for the jury. The interest of justice and fairness require the production of the report.

ORDER

It is ORDERED that the Plaintiffs Motion for Order Compelling Production of a Document by Third-Party Deponent, Roman Catholic Bishop of Boston, a Corporation Sole be ALLOWED. Said third-party deponent, Roman Catholic Bishop of Boston, is to produce the said three page report, dated February 22, 1993, for plaintiffs counsel for photocopying within seven days of the date of this order.