Tiffany, J.
This is an action in tort by the plaintiff, Pesce, against the defendant, First National Stores, for: (1) interference with the plaintiffs contractual rights; and (2) for defamation of the plaintiff.
A review of the docket entries shows that there was an original co-defendant, John E. Cain Company; but that after a series of post-judgment motions, the findings and judgment against John E. Cain Company were vacated and Cain was dismissed as a party defendant.
A summary of the evidence presented at trial as contained in the report reveals that Pesce was a franchisee of John E. Cain Co. and was the distributor of its products. Among Pesce’s customers were “Big Boy” stores owned and operated by the defendant, First National Stores. On October 10, 1975, Pesce was engaged in servicing Cain’s potato chip rack in one of the Big Boy stores in the Watertown-Belmont, Massachusetts area. During the servicing of the potato chip rack, a controversy developed with the store manager, Spellman, concerning a deviation by Pesce from the customary procedure of exchanging broken bags so as to give the store credit for the replacement. During an oral exchange, Pesce admitted that “maybe he had made a mistake.”
At this point, Pesce was asked to go upstairs to Spellman’s office where a discussion of Pesce’s present and past conduct concerning credits owed to the store took place. As a result of this discussion, a statement was signed by Pesce in the presence of Spellman and Leo Cribben, the Assistant Manager, wherein Pesce admitted that he had “beaten” Big Boy in the past.
Cribben testified that he had never met Pesce before, that Pesce was free to leave the office at any time and that no security personnel were present at any time.
Pesce’s accusations intending to support his claim of defamation were that Spellman called him a liar and accused him of clipping the store. These statements were made while all three were in the closed, upstairs office; and no evidence was introduced that store customers heard any of the alleged defamatory or derogatory remarks made to Pesce by First National employees.
A defamation which charges a plaintiff with criminal conduct is actionable per se. Finger v. Pollack, 188 Mass. 208 (1905); Sousa v. Davenport, 3 Mass. App. Ct. 715 (1975). Upon familiar principles, a master is liable for the wrongful acts of his servant committed within the scope of his authority. Mills v. W. T. Grant, 233 Mass. 140 (1919).
However, a conversation by one person imputing a crime to another is *65 conditionally privileged if it is made in good faith without malicious motive, in the belief that it is true, in reference to a matter in which the person making it is immediately interested, and for the purpose of protecting his interest. Christopher v. Akin, 214 Mass. 332 (1913).
The trial court’s subsidiary findings with respect to the defamation count do not indicate whether the issue of conditional privilege was considered in its findings. In Pion v. Caron, 237 Mass. 107 (1921), which established the liability of a principal for slander by an agent, the Court stated:
The words spoken are in themselves actionable as the law infers they were spoken with malicious intent. The inference may be rebutted when circumstances are such as to exclude the idea of malice and when spoken in good faith in the performance of a duty with the honest intent to protect the interest of the party using the words and the plaintiff must prove malice in order to recover.
There was evidence in Pion that when the defendant discharged the store employee, he did not believe she had stolen anything, contra to the case sub judice.
A conditional privilege to make a defamatory statement may be abused and so lost by the person making the statement, even though there is no malice on his part. Galvin v. New York, New Haven & Hart. R.R. Co., 341 Mass. 293 (1960). However, in the case at bar, Cribben, the assistant store manager, had never met Pesce before this reported incident.
It is the plaintiffs burden to prove not only that the defamation was communicated to a third person, but also that the third person understoond it. The evidence as reported did not indicate that any of the customers heard the conversation that took place in the upstairs office.
On the day following the incident, Pesce returned to the Big Boy store and volunteered to one Morgan, an employee of First National, the accusations made on the previous day. This statement made by the recipient of an alleged slanderous statement may not thereafter be complained of as a communication to a third person. RESTATEMENT (SECOND) OF TORTS, §583.
With respect to the slander counts, our review of the findings, rulings and judgment of the trial judge is governed by the Dist./Mun. Cts. R. Civ. P., Rule 1A et. seq. In cases such as the instant one, the rules provide that “findings of fact shall not be set aside unless clearly erroneous.” Dist./Mun. Cts. R. Civ. P., Rule 52(a). A finding is clearly erroneous when, although there is eveidence to support it, the reviewing court on the basis of the entire evidence is left with the “definite and firm conviction that a mistake has been committed.” United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); Marlow v. New Bedford, 369 Mass. 501 (1976).
Our review of the record as set forth in the report leaves us with the firm conviction that the evidence does not warrant the finding made by the trial judge as to slander.
The evidence, as reported, concerning the plaintiffs allegation of interference with his contractual rights involved oral communication with representatives of Cain as the franchisor. A subsequent meeting was held with representatives of Cain, Pesce and Spellman and Cribben representing First National Stores. As a result of this meeting, Cain , as the franchisor, determined that due to Pesce’s inability to service the First National Stores (i.e. Big Boy accounts), it would not be possible for Cain to continue its relationship with him.
The basic elements of the tort of intentional interference with contractual rights places the burden on the plaintiff to establish an existing contract and an intentional and wrongful interference by the defendant. Justification is an affir *66 mative defense to be pleaded and proved by the defendant.
The burden is on the plaintiff to prove malice rather than on the defendant to prove absence of malice. It is to be observed in the reported evidence that the actions taken by First National Stores were to deny entrance to the store by Pesce as a result of observations of his conduct. As a result of Pesce’s inability to service the First National Stores accounts, it was Cain’s determination to sever the franchise agreement. An effort to protect a business interest cannot be construed as spite or ill will toward the plaintiff or, acting in combination with Cain or any other person, in furtherance of a conspiracy. Ross v. Wright, 286 Mass. 269 (1934).
A defendant may escape liability for intentional interference with contractual rights if interference was privileged as part of his employment responsibilities. Ryan, Elliott & Co., Inc. v. Leggat, McCall & Werner, Inc. 8 Mass. App. Ct. 686 (1979). To avail himself of this privilege, the defendant is required to demonstrate that his communication is for the purpose of protecting his own interest in the full belief that his communication is true. Galvin v. New York, New Haven & Hart, R.R. Co., supra at 293. He must not use the privileged occasion to utter charges of a character foreign to its legitimate purposes. Conroy v. Fall Fiver Herald News Co., 306 Mass. 488 (1940). The rule establishing conditional privilege is maintained because if the rule were otherwise, there would be a fear that numerous actions would be brought against persons who were acting honestly in the discharge of a duty. Sullivan v. Birmingham, Grimm & Larkin, Mass. App. Ct. Adv. Sh. (1981) 326.
Requests for rulings number 8 and 11 call for a required finding that any words uttered by employees or agents of First National Stores, Inc. were not intended to defame Joseph Pesce and did not, in fact, defame Joseph Pesce; and that statements made by agents or employees of First National Stores, Inc. were made in the context of a contractual business relationship with John E. Cain Co., and that there was no showing of actual malice.
The judge’s finding and his treatment of requests for rulings of law numbers 8 and 11 do not indicate that any consideration was given to the question of contractual privilege.
We find error in the denial of requests numbers 8 and 11 in that the evidence as reported would not sustain a finding of the communication of the defamatory remarks, and that conversations between Cain and First National Stores, Inc. were in the nature of a contractual business relationship.
The case is remanded to the trial court for a new trial.

So ordered.