Cowdrey, P.J.
This is an action in tort for slander in which the plaintiff seeks monetary damages from defendant Polaroid Corporation and from its employees, defendants Kraytenberg and Holmes.
The trial court entered summary judgment for the defendants upon their motion pursuant to Dist./Mun. Cts. R. Civ. P., Rule 56.
A review of the report and attached pleadings, affidavits and deposition discloses the following: Regina Caines, Quality Assurance Manager at Polaroid’s Battery Division was approached on May 22, 1981 by a female, hourly employee who is described in the complaint as “Jane Rowe.” Rowe informed Caines that she had been receiving obscene, harassing telephone calls from a male caller at her home for almost a year; and that such calls had begun to increase in frequency and to involve voice contact, which included the caller addressing Rowe by name. The telephone company had failed to assist Rowe in any way. Rowe stated to Caines that she believed the caller to be plaintiff Albert DiSilva based not only on her recognition of his voice, but also on earlier incidents in which DiSilva had made sexual overtures to her at work which she had rebuffed. Rowe further stated that she had discussed her suspicions about DiSilva with several, female Polaroid employees who agreed that the plaintiff was a “likely suspect.”
Plaintiff DiSilva served in a supervisory capacity at Polaroid. Caines deemed the Rowe allegations sufficiently significant to advise the Personnel Department. Caines thus arranged for a meeting with Pauline Calabro, Senior Personnel Administrator of the Battery Division, during which Rowe repeated her sexual harassment complaint. Calabro instructed Rowe to refrain from any discussion of the matter with Polaroid personnel.
Calabro concluded that the matter should be brought to the attention of the Battery Division Personnel Manager, Ernest Kraytenberg. Caines and Calabro thus advised Kraytenberg of the situation that morning, and Kraytenberg then requested the presence of Douglas Holmes at a meeting of all four. Holmes was the Senior Technical Manager and acting Plant Manager on the date in question. Caines and Calabro repeated Rowe’s allegations to *2 Holmes and Kraytenberg. Holmes and Kraytenberg then advised Caines and Calabro not to discuss the allegations with anyone and to instruct “Rowe” to keep the matter confidential.
Holmes and Kraytenberg decided that Holmes should contact corporate counsel and that Kraytenberg should advise the corporate security chief to assist Rowe in determining the identity of the caller. Holmes and Kraytenberg then requested a meeting with the plaintiff, Albert DiSilva.
Holmes and Kraytenberg advised the plaintiff at this meeting that a female employee had been receiving harassing phone calls and that she had suggested that the caller was DiSilva. Holmes explained to DiSilva that they were informing him, as a member of the management team, because the mail er was serious and required investigation. Holmes indicated that he was unable to judge the validity of “Rowe’s” allegations at that time. Holmes also stated th at he hoped DiSilva was not the caller, but that if he were, he should desist as the caller was likely to be identified. DiSilva was also apprised of the assistance to be provided by the corporate security chief to Rowe in the case. DiSilva became enraged during the meeting and demanded to know the name of the employee who had made the accusation. He was advised that company policy precluded releasing this information.
Caines and Calabro held several meetings with Rowe after May 22, 1981. Rowe informed them that she had received no further annoying telephone calls since the filing of her harassment complaint with them on May 22,1981. Rowe also met with Calabro and James Shea, Director of Polaroid Security. Shea rendered advice to Rowe as to the role of the telephone company in such situations, the type of equipment available to handle and trace harassing calls and the most effective manner of dealing with such callers.
Subsequent to May 22, 1981, Holmes repeated the Rowe accusations to three members of the Polaroid management hierarchy: (1) Robert Jacobs, Senior Manufacturing Manager, Battery Division, who had been on vacation on May 22 and on whose behalf Holmes had acted on that date; (2) Dr. Sheldon Buckler, Senior Corporate Officer, to whom Holmes was required to report on all his activities and special project assignments; and (3) Howard Siegal, General Manager of the Battery Division to whom Holmes also reported generally. Holmes advised these individuals of the Rowe charges and of the steps he and Kraytenberg had taken. Information about the matter was solicited from Holmes by William Wilson, Operations Manager of the Battery Division. Wilson had learned of the situation directly from plaintiff DiSilva. Holmes stated to Wilson that his meeting with DiSilva was designed to inform the latter, not accuse him. Holmes requested that Wilson keep the matter confidential.
Subsequent to May 22,1981, Kraytenberg spoke to two Polaroid employees about the matter and instructed each of them to keep the matter confidential. These two were John Carrington, Personnel Manager of Polaroid, Krayten-berg’s immediate supervisor; and Stephen Douglas, Senior Personnel Administrator, who reported directly to him. Kraytenberg was approached by Milton Dentch, DiSilva’s immediate supervisor and by William Wilson. Kraytenberg refused to discuss the matter with either of them. Finally, Kraytenberg also advised Operations Manager Jacobs, who had been informed by Holmes. The plaintiff was a member of Jacobs’ department. At Jacobs’ request, Holmes and Kraytenberg held a second meeting with DiSilva who expressed his anxiety and his desire to know the name of the female employee involved. Holmes and Kraytenberg reiterated their assurances that *3 they were not accusing him but simply keeping him informed. They also suggested that he remain calm until the completion of the investigation.
Kraytenberg also conducted several follow-up conferences with Caines and Calabro who reported that Rowe had received no further calls and that she was being assisted by Shea.
The defendants contended in their Dist./Mun. Cts. R. Civ. P., Rule 56 motion for summary judgment that as Polaroid’s allegedly slanderous publications were privileged, the plaintiffs claim was insufficient as a matter of law. Specifically, the defendants argued that Polaroid’s actions in responding to a charge of sexual harassment by one of its supervisors were mandated by Title VII of the Civil Rights Act of 1964 and were thus absolutely privileged. The defendants argued alternatively that Polaroid’s repetitions were reasonable and necessary to protect the interests of the corporation. Affidavits by Holmes, Kraytenberg. Caines and Calabro as well as excerpts from the deposition of plaintiff DiSilva were submitted in support of the defendants’ Rule 56 motion.
In a memorandum in opposition to the Rule 56 motion, the plaintiff argued that no absolute privilege existed and that any conceivable conditional privilege had been abused and thus forfeited by the defendants. The plaintiff submitted no affidavit in opposition to the defendants’ motion.
1. It is essential to note initially that no genuine dispute as to any material fact exists in this case. Summaryjudgment pursuant to Dist./Mun. Cts. R. Civ. P., Rule 56 was thus a procedurally proper device for the resolution of this controversy.
2. No issue arose as to the defamatory character of Rowe’s allegations herein. General Laws, c. 269, s. 14A renders the placement of a harassing telephone call a criminal offense in this Commonwealth. A verbal statement which charges an individual with the commission of a crime is actionable per se. Sousa v. Davenport, 3 Mass. App. Ct. 715 (1975); Pesce v. First Nat’l Stores, Inc., 1983 Mass. App. Div. 64.
Similarly, as all facts must be viewed in the light most favorable to the party opposing a motion for summary judgment, Hub Assoc. Inc. v. Goode, 357 Mass. 449, 451 (1970), we will assume arguendo that there is no material issue herein as to a publication of Rowe’s allegations by Polaroid’s employees. A communication between agents of the same corporation, even when made with reference to some aspect of corporate business, may constitute a publication for the purpose of maintaining a defamatic a action. Bratt v. International Business Machines Corp., 392 Mass. 508, 518 (1984); Bander v. Metropolitan Life Ins. Co., 313 Mass. 337, 348 (1943).
3. The dispositive issue in the case sub judice is, therefore, whether the publication of Rowe’s allegations by Polaroid employees was absolutely or conditionally privileged as an unavoidable incident of a Title VII investigation of an employee’s sexual harassment complaint. We hold that the defendants enjoyed a conditional privilege in repeating the allegations which form the basis of this action.
Massachusetts has long recognized the existence of a conditional privilege to publish even defamatory material if the publication is
fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs in matters where his interest is concerned....
Gasselt v. Gilbert, 72 Mass. (6 Gray) 94, 97 (1856). A qualified authority or privilege to publish such material is restricted to those instances in which *4 “the publisher and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further it.” Sheehan v. Tobin, 326 Mass. 185, 190-191 (1951). The operation of such a conditional privilege has frequently been found when the pursuit of a legitimate business interest has entailed defamatory publications. See, e.g., Burns v. Barry, 353 Mass. 115 (1967) (slanderous statements solicitated by prospective employer from former employer as to plaintiffs character or qualifications privileged); Retailers’ Commercial Agency, Inc., Petitioner, 342 Mass. 515 (1961) (defamatory reports made by mercantile agency to interested subscribers privileged); Galvin v. New York, N.H. & H. R.R., 341 Mass. 293, 296 (1960) (defamatory language employed in determining identity of person who stole goods from defendant’s business); Doane v. Grew, 220 Mass. 171 (1915) (discussion of former servant’s character with prospective employer privileged). It is well established that an employer has a legitimate need to determine if an employee is professionally, physically and psychologically capable of performing his duties. Bratt v. International Bus. Mach. Corp. supra at 516-517. An inter-corporate communication respecting the character or fitness of an employee is thus conditionally privileged “if made in good faith by a person having a duty in the premises to one who has a definite interest therein.” Id., quoting from Leonard v. Wilson, 150 Fla. 503, 505 (1942).
Polaroid possessed obvious and legitimate interests in determining the validity of an accusation of unlawful conduct leveled against one of its supervisory personnel. Statements made pursuant to the defendants’ right to investigate these charges of sexual harassment would clearly be conditionally privileged because made in furtherance of the defendants’ interests in protecting its employees, in preserving employee morale, in promoting sound and efficient business operations and in insuring the highest level of professional conduct by its supervisory and management staff.
The conditional privilege afforded to Polaroid to safeguard the rights of its employees is not derived, however, solely from the defendant’s pursuit of a moral imperative or simple business interest. Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000-2(a)(l) renders it unlawful for an employer “to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment, because of such individual’s ... sex. . . .” All employers, including defendant Polaroid herein, are thus charged by federal law with “an affirmative duty to maintain a workplace free of sexual harassment and intimidation.” Interim Guidelines on Sexual Harassment, 45 Fed. Reg. 25025 (April 11, 1980). A primary component of this affirmative duty is the employer’s responsibility promptly to initiate all necessary proceedings to rectify instances of harassment in the workplace, including investigations of sexual harassment complaints. See Bundy v. Jackson, 641 F.2d 934 (D.C. cir. 1980); Munford v. James T. Barnes & Co., 441 F. Supp. 459 (E.D.Mich. 1977).
It is clear that Jane Rowe’s allegations on May 22, 1981 of the plaintiffs vn Ipability for the placement of obscene and harassing telephone calls to her constituted a complaint of sexual harassment within the purview of Title VII which required action by the defendants. In the “Final Guidelines on Sexual Harassment,” 29 C.F.R. §1604.11, (“Guidelines”) promulgated by the Equal Employment Opportunity commission (“EEOC”), sexual harassment is defined, inter alia, as “verbal conduct of a sexual nature .. . [which] has the purpose or effect of unreasonably interfering with an individual’s work *5 performance or creating an intimidating, hostile or offensive working environment.” The “terms, conditions or privileges of employment,” 42 U.S.C. 200e-2(a)(1), which constitute a working environment include the state of emotional and “psychological wellbeing at the workplace.” See Henson v. City of Dundee, 682 F.2d 897 (11 cir. 1982); Bundy v. Jackson, supra at 945. To advance a complaint cognizable under Title VII, an employee is thus not required to establish that the harassment in question resulted in the loss of a tangible job benefit; or that it took the most blatant form of a demand for sexual favors as a quid pro quo for promotion, increased compensation or even continued job security. An employee is protected under the Civil Rights Act of 1964 from even the most subtle patterns of sexual harassment which may engender humiliation and the fear of both repeated, unwanted advances and of retaliation, and which may thus unlawfully subject the employee to hostile, abusive or psychologically stressful working conditions. Id. at 945; Barnes v. Costle, 561 F.2d 983, 994 (D.C.Cir. 1977); Henson v. City of Dundee, supra at 910.
The consequences of an employer’s failure to act upon a sexual harassment complaint are clear, irrespective of the actual truth or falsity of the charges made.[3] Pursuant to § 1604.11 of the Guidelines, an employee is liable for acts of sexual harassment by its supervisory personnel “regardless of whether the specific acts complained of were authorized or even forbidden by the employer and regardless of whether the employer knew or should have known of their occurrence.” An employer is deemed responsible for acts of sexual harassment by non-supervisory employees if the employer “knew or should have known of the conduct. . .” Thus whether the plaintiff may be deemed a supervisor or a simple employee vis-a-vis Jane Rowe, defendant Polaroid’s inaction in the face of Rowe’s allegation of harassment raised the spect re of a potential, vicarious corporate liability for sexual discrimination under Title VII of the Civil Rights Act of 1964. The exclusive avenue for avoidance of such liability by Polaroid was the prompt institution of all necessary, corrective action, including an immediate investigation of the charges made. Barnes v. Costle, supra at 1000; Munford v. James T. Barnes & Co., supra; Bundy v. Jackson, supra. An employer’s failure to undertake an investigation could be deemed evidence of the employer’s acquiescence in, or condonation of, the unlawful acts practiced by subordinates. Robson v. Eva's Supermarket, Inc., 538 F. Supp. 857 (N.D. Ohio 1982).
On the basis of the foregoing, it is evident that Polaroid, and its employees Kraytenberg and Holmes, not only acted in furtherance of legitimate business interests, but also fulfilled a legal duty, in promptly responding to the sexual harassment complaint by Jane Rowe against the plaintiff herein. All statements made by the defendants in the course of their investigation of this complaint and in their efforts to assist Rowe were thus conditionally privileged as a matter of law.
4. It is axiomatic that the distinction between a conditional and an absolute privilege is that the former may be lost if abused. See, generally, Hutchinson v. New England Tel & Tel. Co., 350 Mass. 188 (1966); Sullivan v. Birmingham, 11 Mass. App. Ct. 359 (1981). Abuse in this context customarily ..ignifies the dissemination of defamatory material with bad faith or express *6 malice, Burns v. Barry, supra at 119; Grindall v. First Nat’l Stores, 330 Mass. 557 (1959), or in an unnecessary, unreasonable or excessive manner. Retailers Commercial Agency, Inc., Pet., supra at 521; Galvin v. New York, N.H. & H. R.R., supra at 297. The plaintiff in a defamation action bears the burden of introducing sufficient evidence to establish that the qualified privilege has been abused and thus extinguished by the defendant’s malice or recklessness. Ezekiel v. Jones Motor Co., 374 Mass. 382, 385 (1978); Joyce v. Globe Newspaper Co., 355 Mass. 492 (1969).
There could be no question in the case sub judice of actual malice, whether the same is defined as bad faith, ill will or as an improper purpose or motive inconsistent with the social policy or interest intended to be protectd by the privilege. See Hollander v. PanAmerican World Airways, Inc., 382 F. Supp. 96 (D.Md.1973); Humphrey v. National Semiconductor Corp., 18 Mass. App. Ct. 132, 134 (1984); RESTATEMENT (SECOND) OFTORTS §§604,605 (1977). The plaintiff testified by way of deposition that neither Kraytenberg nor Holmes had acted out of personal malice, but had instead been simply “doing their job” in undertaking an investigation of Rowe’s harassment complaint against the plaintiff. The reported evidence substantiates the plaintiffs admission.
In the absence of proof of actual malice, it was incumbent upon the plaintiff herein to advance evidence of recklessness in the defendants’ re-publication of the defamatory allegations at issue. The memorandum submitted by the plaintiff in opposition to the defendants’ summary judgment motion does little more, however, than characterize the actions of defendants Kraytenberg and Holmes as precipitant and reckless. That degree of recklessness which is sufficient to destroy a qualified privilege must be something “more than hasty or mistaken action.” Retailers Commercial Agency, Inc., Pet., supra at 522. Moreover, the plaintiffs mere characterization of the investigation in question as reckless clearly falls short of the “specific facts” required by Rule 56 to be offered by the non-moving party to demonstrate the existence of a material issue which would require a trial on the merits. See, e.g., John B. Deary, Inc. v. Crane, 4 Mass. App. Ct. 719 (1976). Such characterization is little more than a conclusory allegation which cannot per se defeat a proper motion for summary judgment. Lewis v. Antelman, 10 Mass. App. Ct. 221 (1980).
Similarly, the complaint sets forth allegations that the defamatory statements in question were improperly communicated by the defendants to the plaintiffs fellow employees, friends and the general public. The publication of a slanderous statement to one not privileged to hear it may constitute evidence of recklessness sufficient to defeat a conditional privilege.[4] See, e.g., Galvin v. New York, N.H. & H. R.R., supra at 297; Sheehan v. Tobin, supra at 192. The plaintiffs contention was, however, denied in the defendant’s answer. Moreover, the uncontroverted evidence summarized in the report to this Division discloses only a republication of Rowe’s allegations to those parties necessary either to sanction the investigation or to assist Rowe; namely, corporate counsel, the corporate security chief and a limited number *7 of management personnel. The plaintiff also admitted in deposition testimony that he had no evidence to substantiate his allegations of excessive publication. It is elementary that a party opposing a summary judgement motion “may not rest upon the mere allegations .. . of his pleadings” büt must set forth specific facts indicative of the existence of a genuine issue for trial. Dist./Mun. Cts. R. Civ. P., Rule 56(e); Noyes v. Quincy Mut. Fire Ins. Co., 7 Mass. App. Ct. 723 (1979); National Ass’n of Government Emp., Inc. v. Central Broadcasting Corp., 379 Mass. 220 (1979). We note in this regard that the plaintiff failed to submit a counter-affidavit in opposition to the defendants’ Rule 56 motion. See, generally, Community Nat’l Bank v. Dawes, 369 Mass. 550 (1976).
In the absence of evidence to suggest an abuse by the defendants’ of their qualified privilege to publish the allegations made by Rowe against the plaintiff, a finding for the defendant was required herein as a matter of law. There was thus no error in the trial court’s allowance of the defendants’ Dist./Mun. Cts. R. Civ. P., Rule 56 motion for summary judgement.
5. The defendants have urged this Division to recognize the existence of an absolute privilege to publish any statements made in response to an employer’s duty to comply with the requirements of Title VII. In view of the salutary purpose of the federal act to invalidate all “artificial, arbitrary and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of. . . impermissible classifications,” Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S. Ct. 849, 853, 28 L.Ed. 2d 158 (1971), a persuasive argument can be advanced for the utility and fairness of an absolute privilege.
The daily implementation in the private sector of the purposes and policy of Title VII rests in large measure on the private employer. The employer is mandated by federal law to investigate and rectify all conduct of his supervisors or employees which violates the prohibitions against harassment and discrimination embodied in Title VII. The defendants’ assert herein that, in this regard, the employer fulfills a governmental function akin to that performed by the EEOC, and that the employer should thus be accorded the same absolute privilege extended to any federal employee who plays a role in the Title VII enforcement scheme. It may also be suggested that such a grant of immunity to the private employer may contribute to more diligent and comprehensive Title VII enforcement efforts.
The case authority advanced by the defendants to establish the existence of an absolute privilege for the private employer is not, however, dispositive. See Barnes v. Ooody, 514 F. Supp. 23, 26 (E.D. Tenn. 1981); Shipp v. Waller, 391 F. Supp. 283 (D.C. 1975); Becker v. Philco Corp., 234 F. Supp. 10 (E.D Va. 1964). Each of these cases involve federal employees or parties who expressly contracted with the federal government to serve as its agent. It is well established that statements made by such federal officers in the discharge of their official duties are absolutely privileged. Barr v. Mateo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). It has not been established that the private employer is as direct “a link in the Government’s overall system” of Title VII enforcement as these federal officers so as to be entitled to an absolute privilege. Becker v. Philco Corp., supra at 13.
The absolute privilege has been traditionally restricted in this Commonwealth to comparatively few cases. Ezekiel v. Jones Motor Co., Inc., supra at 385. In view of this restriction and of our holding as to the defendants’ qualified privilege herein, we decline any ruling on the question of an *8 employer’s absolute privilege in this area.
6. There being no error in the trial court’s entry of summaryjudgment for the defendants herein, the report is dismissed.

 It is, of course, illogical to suggest that an employer is reckless in undertaking an investigation of sexual harassment charges unless the employer knows these charges to be true. The veracity or invalidity of the grounds of a Title VII complaint can be ascertained only by means of such an investigation.

 The Supreme Judicial Court noted, however, in Brat v. International Bus. Mach. Corp., supra at 515, that “The Restatement also appears to sanction a scienter prerequisite to finding an ‘excessive publication’ which abuses the conditional privilege. See RESTATEMENT (SECOND) OFTORTS §604 at 292. Section 604 states that one who ‘knowingly publishes the [defamatory] matter to a person to whom its publication is not otherwise privileged, abuses the privilege unless he reasonably believes that the publication is a proper means of communicating’ the matter to a privileged person. Comment b of § 604 states that excessive publication does not occur merely by an incidental publication of the information to unprivileged persons unless the communication is ‘unnecessary and unsanctioned by a custom based on ordinary necessities of business.'"