Xifaras, J.
INTRODUCTION
The plaintiff, Anne Hansen (“Hansen”), brings this action against the defendants J.L. Hammett International, Inc. (“Hammett”) and Richard Hogan (“Hogan”) alleging the following five claims: 1) interference with privacy pursuant to G.L.c. 214, §1B; 2) wrongful discharge against Hammett; 3) breach of the covenant of good faith and fair dealing against Hammett; 4) detrimental reliance against Hammett; and 5) intentional interference with contractual or advantageous relations against Hogan. This matter is presently before the court on the defendants’ motion for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons discussed below, the defendants’ motion is ALLOWED.
BACKGROUND
The undisputed material facts as established by the summary judgment record are as follows:
On January 6, 1997 Hansen commenced employment at Hammett, an office supply company, in the position of Product Manager of Stationery. Hansen has a daughter who has been diagnosed with Joubert-Bolthauser-Syndrome, which requires extensive medical treatment and total care. The plaintiffs daughter is institutionalized but also resides with her parents on a part-time basis. Due to her child’s medical condition, Hansen requested flexibility or accommodations from her employer, Hammett, in order to attend to her child’s medical needs. Although at times Hammett granted such flexibility, ultimately Hammett requested that Hansen work on a full-time basis and denied her request for a part-time or flex-time schedule.
Prior to commencing work with Hammett, Hansen was employed at Staples, Inc. (“Staples”) for two separate periods, namely: from April of 1986 through February of 1991 and then again from February of 1994 through September of 1996. Staples employed Hansen on a full-time basis, providing an annual salary of $56,000 plus bonus and stock. During her employment at Staples, Hansen neither required extensive time off nor accommodations in her work schedule in order to attend to her child’s medical needs.
According to the plaintiffs complaint, in November of 1996, she met with Hogan, with whom she had previously worked at Staples, to discuss potential employment at Hammett.[1] During this meeting, Hansen informed Hogan about her daughter’s medical condition and the need for regular medical treatments. Hansen informed Hogan that she would need to take time off to attend her daughter’s appointments. Hogan then assured Hansen that Hammett was “a family-oriented company.” Further, Hogan stated that Hansen should not worry about taking time off in order to attend to her child’s medical needs. Shortly after the meeting, the plaintiff alleges that she resigned from Staples in reliance on Hammett’s “promises.” It was not until December 27, 1996 that Hammett sent Hansen a letter offering her the full-time position of Product Manager of Stationery commencing January 6, 1997.
Hansen was hired as a full-time exempt employee. In March of 1997 Hansen tendered a resignation to Hogan, her supervisor, citing the primary reason for her departure as Hammett’s failure to provide her with the tools necessary to do her job effectively. Another factor in the plaintiffs decision to resign was that her daughter’s medical care was going to continue beyond the time frame she had initially discussed with Hogan.
After discussion, however, Hansen and Hogan agreed that Hansen would continue in the same position but would work a three-day week as a non-exempt employee.
Hansen still worked a four or five-day week from July 19, 1997 through September 1997. The plaintiff earned more money as a non-exempt employee than she would have earned had she remained a full-time exempt employee. Accordingly, in the beginning of November 1997, Hogan informed Hansen that Hammett had decided that her position needed to become a salaried full-time exempt position as of January 1, 1998. Hogan informed Hansen that Hammett made this decision, among other reasons, because having *609 non-exempt employees in the same position as exempt employees raised various budgetary and scheduling difficulties.
Hogan requested that Hansen inform him of her decision within ten days, by November 17, as to whether she would return to full-time exempt status. When this period lapsed, Hogan asked Hansen for her decision, to which she requested that she be permitted to work as a part-time non-exempt employee through March 1998. Hogan informed Hansen that he could not approve such an extension, but would discuss the matter with Human Resources. Hogan did not address this request with Human Resources. However, within two days Hogan again asked Hansen for her decision. It was not until November 24, 1997 that Hogan again requested Hansen’s decision. On November 26, 1997 Hansen resigned from Hammett effective November 17, 1997. Hansen asked neither Hogan nor Human Resources whether she would be able to take time off for her child’s medical appointments as a full-time exempt employee.
Steve Alexander (“Alexander”), a sales representative for Alexander and O’Keefe who called on Hansen, spoke with Hogan regarding Hansen’s departure. In response to Alexander’s inquiry, Hogan informed Alexander that Hansen was no longer working for Hammett because she did not want a regular full-time schedule. Hogan explained to Alexander that Hansen had a child with medical needs, but did not explain the nature of the child’s condition.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “If the moving party established the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the motion].” Pederson v. Time Inc., 404 Mass. 14, 17 (1989); Madsen v. Erwin, 395 Mass. 715, 719 (1985).
I. COUNT I: PRIVACY RIGHT PURSUANT TO G.L.c. 214, §1B
Count I of Hansen’s complaint alleges that the defendants violated G.L.c. 214, §1B when Hogan disclosed to Alexander that Hansen had “a child with a medical condition” and that she needed a flex-time schedule. The defendants move for summary judgment on the ground that the information given by Alexander was not of such a personal and intimate nature that it can form the basis of a privacy claim. This court agrees.
General Laws Chapter 214, section IB provides:
A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages. G.L.c. 214 §1B (1994).
In bringing a claim under this statute, a plaintiff must prove both that the defendant’s actions were unreasonable and that the conduct amounted to either a substantial or serious interference with his privacy. Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517-18 (1991). Intracorporate disclosure of private facts about an employee can constitute an invasion of privacy. Galdauckas v. Interstate Hotels Corporation, 901 F.Sup. 454, 470 (D.Mass. 1995).
Gratuitous disclosures by an employer regarding an employee’s state of health have been found to be actionable, even where they are confined to the workplace. Cadrin v. New Eng. Tel. & Tel. Co., 828 F.Supp. 120, 122 (D.Mass. 1993) (material issues of fact as to whether intracorporate disclosures of plaintiffs having cancer violated G.L.c. 214, §1B); Doe v. Town of Plymouth, 825 F.Sup. 1102, 1107 (D.Mass. 1993) (genuine issues of material fact as to whether disclosure of plaintiffs HIV status constitutes an invasion of privacy). These cases deal with the individual employee’s medical conditions and not those of the employee’s family. Although no Massachusetts appellate court has recognized the right to privacy for disclosure of a family member’s medical condition pursuantto G.L.c. 214, §1B, this court recognizes that such a privacy right could exist. See Doe v. Borough of Barrington, 729 F.Sup. 376, 385 (D.N. J. 1990) (privacy interest in wife and child from disclosure that husband and father had AIDS). However, this is not a case to recognize such a right exists as there is no substantial and serious invasion of privacy.
To prove that Hogan interfered with Hansen’s privacy rights, the plaintiff must establish that there was a substantial and serious interference with her privacy. Bratt v. International Business Machines Corp., 392 Mass. 508, 518 (1984). There is no violation of G.L.c. 214, §1B where disclosure is reasonable or justified. See Mulgrew v. City of Taunton, 410 Mass. 631, 637 (1991). Section IB proscribes “disclosure of facts about an individual that are of a highly personal or intimate nature when there exists no legitimate countervailing interest. ’’Bratt, 392 Mass. at 518. Here, Hogan’s disclosure to Alexander that Hansen had “a child with a medical condition,” and needed flex-time does not amount to an unreasonable and substantial or serious invasion of privacy. See Galdauckas, 901 F.Supp. at 470 (D.Mass. 1995) (discharged employee’s age on birthday card circulated to co-workers does not constitute either a serious or unreasonable interference with plaintiffs rights or an intimate or personal fact that can form a basis of a privacy claim, even where there is no business reason for such a disclosure); Hughes v. *610 City of Malden, 1994 WL 90251, Civil No. 920356F (Super. Ct. Nov. 4. 1994) (no unreasonable or serious interference with privacy rights where defendants listed his “depressed mental state" as the reason for his leave request submitted to Personnel Administration); Frick v. Boyd, 350 Mass. 259, 264 (1966) (no common law right to privacy where unauthorized publication of facts did not rise to the level of “substantial, serious, or indecent intrusion into her personal life”).
Moreover, in determining whether there is a violation of §1B, it is necessary “to balance the employer’s legitimate business interest in obtaining and publishing the information against the substantiality of the intrusion on the employee’s privacy resulting from the disclosure.” Bratt, 392 Mass. at 521. The employer, here, disclosed the rationale concerning the plaintiffs sudden departure from employment at Hammett in order to maintain good relations with Alexander. The defendant did not state the exact medical condition of the plaintiffs child and did not provide any detailed private information. As there is no reasonable likelihood that the plaintiff can establish a substantial, unreasonable, or serious interference with her privacy, the defendants’ motion for summary judgment on Count I is ALLOWED.
II. COUNT II-WRONGFUL DISCHARGE
Count II of Hansen’s complaint alleges that Hammett’s conduct constituted a discharge of the plaintiffs employment in violation of the terms of the plaintiffs employment agreement. The plaintiff, in her complaint, has not alleged that she had an employment contract for a definite time frame. Rather, Hansen claims that Hammett’s conduct constituted a discharge and “was arbitrary and capricious and constituted a breach of the terms of the agreement as to the Plaintiffs employment.” It is undisputed that Hansen is an at-will employee and as such may be fired at any time for any reason or no reason at all. Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9 (1988). Absent narrow public policy exceptions, Hammett was free to either discharge Hansen or mandate that she return to the full-time exempt position for which she was originally hired. The plaintiff has not set forth a claim for wrongful discharge in violation of a contractual agreement.
Moreover, at the hearing of this matter, both parties agreed that the defendant’s motion should be allowed with respect to this count. Accordingly, the defendant’s motion for summary judgment on Count II is ALLOWED.
III. COUNT m-BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
Count III of the complaint alleges that Hammett violated the covenant of good faith and fair dealing when Hogan asked Hansen to return to full-time status. Specifically, the plaintiff argues that Hogan’s request was actually an attempt to force her to resign so that she would not become eligible for benefits under the Family and Medical Leave Act of 1993, 29 U.S.C. §2511 et. seq. (“FMLA”). The general rule is that an at-will employee may be terminated at any time for any reason or for no reason at all. Jackson, 403 Mass. at 9. However, implicit in all contracts is a covenant of good faith and fair dealing. Glaz v. Ralston Purina Co., 24 Mass.App.Ct. 386, 389 (1987). The courts of this Commonwealth have invoked this principle to create several exceptions to the employer’s ability to terminate at-will employees. Id. The implied covenant of good faith thus makes an employer liable for discharging an employee for reasons violating public policy. Id. Thus, redress is available for employees who are terminated for asserting a legally guaranteed right (e.g. filing workers’ compensation claim), for doing what the law requires (e.g. serving on a jury), or for refusing to do that which is illegal (e.g. committing perjury). Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472-73 (1992). The exception also has been held to apply where an employee cooperates with a law enforcement agency in a criminal investigation of the employer, Flesner v. Technical Comm. Corp., 410 Mass. 805, 810-11 (1991), where an employee attempts to enforce safety laws which she has a duty to enforce, Hobson v. McLean Hosp. Corp., 402 Mass. 413, 416-17 (1988), and where an employee reports criminal wrongdoing to individuals within the company, Shea v. Emmanuel College, 425 Mass. 761, 763 (1997).
In alleging a breach of the implied covenant of good faith, the employee has the burden to point to some clearly defined and well-established public policy that is threatened by the employer’s action. Glaz, 24 Mass.App.Ct. at 389-90. Here, the plaintiff claims that public policy does not countenance discharging the plaintiff in order to prevent her from reaping the benefits under the Family and Medical Leave Act of 1993 , 29 U.S.C. §2511 et seq. (“FMLA”). The defendants, however, contend that the plaintiff may not bring a claim for wrongful discharge based upon public policy on three grounds: 1) the FMLA itself provides a civil remedy and, thus, all common law remedies are precluded and 2) there is no clear violation of an established public policy and 3) there was no constructive discharge.
1) FMLA does not afford plaintiff a statutory remedy
It is true that a plaintiff may not recover for wrongful termination in violation of public policy if a statute already provides a vehicle for vindicating that public policy. Ourfalian v. Aro Manufacturing Co., 31 Mass.App.Ct. 294, 296 (1991). However, this rule applies only where there is a statutory remedy available. Section 2617 of the FMLA sets forth a statutory remedy for employers who violate a prohibited act as set forth in 29 U.S.C. §2615. Under Section 2615 an employee is not able to assert a claim under the FMLA until he or she has been employed for one year, at which time the employee would be protected by the FMLA. Coleman v. Prudential Relocation, 975 F.Supp. 234, 245 (WD NY 1997). In this case, the FMLA does *611 not afford the plaintiff a statutory remedy because she was not employed by Hammett for a period in excess of a year. Accordingly, the plaintiff is not barred from bringing a common law remedy on that basis.
2) No clear violation of well-defined and clearly established public policy
The defendants also argue that the plaintiffs “discharge” is not in clear contravention of a well-defined public policy. Section 2612 of Title 29 provides that “an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period” for a number of reasons, including “to care for . . . a . . . son or daughter of the employee . . .” By statute only an “eligible employee” can engage in a protected activity under the FMLA.
Hammett did nothing to prevent Hansen from gaining eligibility under the FMLA. Had Hansen not resigned, she would have been protected under the FMLA a few days after her position returned to full-time non-exempt status. At the time Hansen resigned, she was not eligible for the benefits under the FMLA because she had not been employed by Hammett for one year. Indeed, the policy balance struck by Congress in not extending the FMLA rights to short service employees cuts squarely against Hansen’s claim. 29 U.S.C. §2601(b)(l) (the purpose of the FMLA is “to balance the demands of the workplace with the needs of families”). There is no clear violation of public policy in “forcing a resignation” because Hansen was not yet eligible for protection under the FMLA.
3) Constructive Discharge
Moreover, the plaintiffs claim for wrongful discharge in violation of the covenant of good faith and fair dealing must fail because it has not been shown that Hansen was either discharged or constructively discharged. Hansen has not claimed that she was formally terminated from her position at Hammett. Therefore, in order to sustain her claim for wrongful discharge based upon public policy, it must appear that she will be able to prove that she was constructively discharged from her position as Manager of Stationery. “A ‘[c]onstructive discharge occurs when the employer’s conduct effectively forces an employee to resign.’ ” GTE Products Corp. v. Stewart, 421 Mass. 22, 33-34 (1995). To establish a claim for constructive discharge, Hansen must prove that “the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee’s shoes would have felt compelled to resign.” Id. (quoting Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1stCir. 1977)). “A constructive discharge occurs when ‘working conditions are so intolerable that a reasonable person would feel compelled to forsake his job rather than to submit to the looming indignities.’ ” Tavares de Almeida v. Children’s Museum, 28 F.Sup.2d 682, 686 (D.Mass. 1998). In other words, the employer’s actions must have the purpose and effect of forcing the employee to quit. Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1st Cir. 1977). “This is an evaluative determination made by applying an objective standard, not a state-of-mind standard.” Tavares de Almeida, 28 F.Sup.2d at 686.
Hansen claims that she was compelled to resign when Hammett returned her position to full-time exempt status. This claim is premised upon the notion that Hansen was forced to quit in order for her to care for her daughter’s medical needs. Viewing the evidence in the light most favorable to Hansen, and drawing all reasonable inferences in her favor, this court nonetheless concludes that the conditions under which Hansen alleges that she would have been forced to work had she remained at Hammett were not so intolerable that a reasonable person would have felt compelled to resign. This is not a case where there is any evidence of demotion, humiliating and unjustified criticism, or great increase or decrease in workload or hours, which have formed the basis of constructive discharge actions. See Contardo v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 753 F.Sup. 406, 411 (D.Mass. 1990). Hansen was initially hired as a full-time exempt employee in January of 1997. Further, Hansen knew that she would be eligible for time off under FMLA under Hammett’s policies in the beginning of January of 1998, when she would have returned to full-time exempt status. Under the FMLA Hansen could have attended to her daughter’s medical appointments had she accepted the full-time exempt position. Accordingly, no reasonable person in Hansen’s position would have felt compelled to resign on this basis. Moreover, prior to resigning, Hansen never asked Hogan or Human Resources whether she would have been allowed to take time off to care for her child.
The summary judgment record also does not support Hansen's contention that Hogan’s repeated requests for her resignation amounted to a constructive discharge. Hogan asked Hansen for a response as to whether Hansen wished to return to full-time exempt status. When Hansen requested an extension in part-time status, Hogan repeated his request. Even if Hammet’s requests for a response constituted a constructive discharge, an at-will employee may be fired for any reason barring any narrow public policy exceptions. As previously stated, there is no public policy violation and thus, summary judgment on Count in is appropriate.
IV. COUNT IV — DETRIMENTAL RELIANCE AGAINST HAMMETT
Based on statements in Hansen’s pre-employment interviews and offer that Hansen would be allowed to attend to her daughter’s medical agenda and that Hammett was a “family-oriented company” and “cared about its employees,” Hansen contends that she is entitled to work on a part-time exempt or flex-time basis. Thus, according to Hansen, when Hammett requested that she return to full-time employment, it breached Hansen’s employment agreement.
*612 In any estoppel claim the plaintiff must show a promise, reliance, and detriment. Loranger Construction Corp. v. E.F. Hauserman Co., 6 Mass.App.Ct. 152, 154 (1978). To avoid the entry of summary judgment, an at-will employee asserting estoppel would have to show that she reasonably relied on an unambiguous promise." Upton v. JWP Businessland, 425 Mass. 756, 760 (1997) (emphasis supplied). The statements made to the plaintiff were ambiguous and no promise in a contractual sense is shown. The plaintiff was hired as a full-time employee and not as a part-time or flex-time employee. It is unreasonable for Hansen to interpret Hogan’s statements to mean that she was entitled to part-time or flex-time status. Moreover, in light of the rule that an at-will employee’s employment is subject to modification at any time, Hammett could have changed the terms of the employment in its discretion within the parameters of the at-will employment rule. Koloziej v. Smith, 412 Mass. 215, 221-22 (1992). This court can discern no reason to hold that Hansen’s reliance on the statements by Hammett employees constituted any detriment, especially since Hansen was hired as a full-time employee. Accordingly, Hammett is entitled to summary judgment on Count IV of Hansen’s complaint which alleges a claim for estoppel based on detrimental reliance.
V. COUNT V — INTENTIONAL INTERFERENCE WITH CONTRACTUAL OR ADVANTAGEOUS RELATIONS AGAINST HOGAN
Finally, the plaintiffs complaint alleges that Hogan intentionally interfered with her employment with Hammett. Specifically, Hansen claims that Hogan used improper means to obtain her resignation when he (1) untruthfully told her that flex-time was being abolished throughout Hammett and that Hammett would not extend her flex-time schedule until March 1998 and (2) harassed her daily for her resignation. “In an action for intentional interference with contractual relations, the plaintiff must prove that: (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant’s interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant’s actions.” Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 476 (1992). A supervisory employee is conditionally privileged to terminate an employee unless he has done so “out of malevolence, that is, with ‘actual’ malice.” Gram v. Liberty Mutual Ins. Co., 384 Mass. 659, 663 (1981). Actual malice is defined as any “spiteful, malignant purpose, unrelated to the legitimate corporate interest.” Shea v. Emmanuel College, 425 Mass. 761, 764 (1997). Further, the employee must show “that spite or malevolence, i.e., a purpose unrelated to any legitimate corporate interest, was the controlling factor urging the plaintiffs discharge.” Alba v. Sampson, 44 Mass.App.Ct. 311, 315 (1998). Plaintiff has the burden of proving that the supervisor’s actions were unrelated to any legitimate corporate interest. Boothby v. Texon, 414 Mass. 468, 487 (1993).
This court concludes that the facts of this case are insufficient to prove that Hogan acted with actual malice unrelated to any corporate interest when he asked Hansen repeatedly whether she would be willing to return to full-time exempt status. Hansen claims that Hogan’s conduct toward her was motivated by actual malice and to prove this Hansen points to several factors which would indicate on the whole that Hogan wanted “to get rid of her.” The plaintiff alleges that malice may be shown because Hogan stated, as one of the many reasons for requesting Hansen to return to a full-time exempt position, that Hammett was abolishing flex-time. An employer may, however, give a factually unsupportable ground or no reason at all for a discharge. See Cort v. Bristol-Myers Co., 385 Mass. 300, 305 (1982) (court declines “to impose liability on am employer simply because it gave false reason or a pretext for discharge of an employee at will”).[2] Moreover, this is not the sole reason Hogan gave for the plaintiffs need to return to full-time employment. Hogan also gave other reasons for this change in status, including a need to have all product managers as salaried non-exempt employees, budgetary constraints, and a uniform schedule.
Hammett’s decision that all product manager positions needed to be full-time exempt positions, not subject to overtime, is within Hammett’s legitimate corporate interest. In addition, Hammett has a legitimate corporate interest in controlling its costs and setting working hours of its employees. As a non-exempt employee, Hansen worked over 100 hours of overtime and earned more than she would have had she remained a full-time exempt employee. Certainly, there is a legitimate corporate purpose to return Hansen to her original status on that ground alone.
This court ALLOWS the defendants’ motion for summary judgment on Count V on the ground that the facts, here, are insufficient to prove that Hogan acted with actual malice, unrelated to a legitimate corporate purpose.
ORDER
For the reasons stated above, the defendants’ motion for summary judgment is ALLOWED.

 Hansen has given a variety of dates for this meeting. In the complaint she alleges the meeting took place in November. During the first day of deposition, Hansen testified the meeting occurred in September; whereas on the second day of depositions she testified the meeting took place on August 1, 1996. What is clear, however, is the fact that the plaintiff resigned from Staples in September of 1996 and began employment at Hammett three months later on January 6, 1997.

 Plaintiff alleges other factors, including Hogan's failure to request a three-month extension of Hansen’s part-time schedule, and Hogan’s repeated requests for a resignation indicate that Hogan acted with actual malice. This court rejects this contention for the reasons stated above. The plaintiff has not established that Hogan was acting with malice apart from a legitimate corporate purpose when he requested a response concerning whether Hansen would return to full-time employment.